PEOPLE *v.* RICHARDS.

1. Escape—Criminal Law—Escape from Custody Outside is Escape from Prison.
   Person sentenced to State prison at Jackson is considered in law to be in prison as well when he is outside at work in another county as when he is actually in prison, and therefore his escape from custody when so at work is escape from prison.

2. Constitutional Law—Statutes—Criminal Law—Escape from Prison Gist of Offense.
   Act No. 7, Pub. Acts 1927, providing that one charged with escape from prison shall be tried in county wherein administrative office of prison may be irrespective of where escape took place, is valid, and not in violation of constitutional right to be tried in county where offense was committed, since gist of offense under said act is escape and not mere place of departure.
   Fellows, J., dissenting.

Error to Jackson; Parkinson (James A.), J. Submitted April 11, 1929. (Docket No. 119, Calendar No. 34,221.) Decided September 4, 1929.

Paul Richards was convicted of escaping from prison. Affirmed.

*John E. Shekell*, for appellant.

*Wilber M. Brucker*, Attorney General, *Harry D. Boardman*, Prosecuting Attorney, and *Owen Dudley*, Assistant Prosecuting Attorney, for the people.

Fellows, J. (*dissenting*). The sole question submitted on this record is the validity of that portion of Act No. 7, Pub. Acts 1927, which provides that

one charged with an escape shall be tried in the
county where the administrative offices of the prison
may be irrespective of where the escape took place.
Defendant was sentenced to the Jackson prison, and
while there, and before his time had expired, was
sent to a road camp in Clinton county to work on
road construction; there he escaped.   Some two
days later he was recaptured and was tried in Jack-
son for the escape, and convicted.

The writer feels bound by three earlier decisions
of this court to sustain the defendant's contention.
Only by the adoption of a legal fiction, which to my
mind is fallacious, can these decisions be circum-
vented, and it be held that a crime actually com-
mitted in Clinton county was in contemplation of
law committed in Jackson county.   In *Swart* v. *Kim-
ball,* 43 Mich. 443, the act was to punish the cutting
of timber on State lands.   By the terms of the act
the prosecution might be brought in the county
where the crime was committed or in other counties.
Kimball was prosecuted in Ingham county for tres-
pass on State lands located in Alpena county.   He
was discharged on *habeas corpus* and brought the
action for false imprisonment.   It may be noted that
all the records and files necessary to be used on the
trial were located at Lansing, and it is here pointed
out that all the records and files are here located at
Jackson, so that the same question of convenience
was present in both cases.   The opinion by Mr. Jus-
tice COOLEY is a most forceful one.   The case has
been cited by this and other courts of last resort
time and time again.   We quote some excerpts from
the opinion:

"The circuit judge who tried the action for false
imprisonment seems to have sustained the act.   In
this he was plainly in error.   The act is not only

tyrannical and oppressive in the last degree, and such as no legislature, even if its power was ample, should ever have passed, but it is manifestly in conflict with one of the plainest and most important provisions of the Constitution.

"The Constitution of the State provides that 'The right of trial by jury shall remain, but shall be deemed to be waived in all civil cases, unless demanded by one of the parties in such manner as shall be prescribed by law.' Article 6, § 27. The right is to *remain*. What right? Plainly the right as it existed before; the right to a trial by jury as it had become known to the previous jurisprudence of the State.     *     *     *

"Now that in jury trial it is implied that the trial shall be by a jury of the vicinage is familiar law. Blackstone says the jurors must be 'of the *visne* or neighborhood; which is interpreted to be of the county where the act is committed.' 4 Com. 350. This is an old rule of the common law; Hawk. P. C. b. 2, c. 40; 2 Hale P. C. 264; and the rule was so strict and imperative that if an offense was committed partly in one county and partly in another, the offender was not punishable at all. Hawk. P. C. b. 2, c. 25; 1 Chit. Cr. L. 177. This overnicety was long since dispensed with, but the old rule has in the main been preserved in its integrity to this day.     *     *     *

"We have not the slightest hesitation in declaring that the act of 1857 (No. 100) so far as it undertakes to authorize a trial in some other county than that of the alleged offense, is oppressive, unwarranted by the Constitution, and utterly void."

The next statute of similar purport which came before this court (2 Comp. Laws 1871, § 7605) permitted prosecutions for embezzlement in the county where the principal place of business of the employer was located. The embezzlement had taken place in Wayne, but under the terms of the act the

prosecution took place in Washtenaw. Following
the *Swart Case*, it was held that the proceeding was
a nullity and "the constitutional guaranty on this
subject is too plain to be controverted." *Hill* v.
*Taylor*, 50 Mich. 549. Again the legislature at-
tempted to confer original jurisdiction upon counties
other than those in which the crime was committed
by providing that prosecutions for stealing from a
railroad car might be brought in any county through
which the car passed (3 Comp. Laws 1897, § 11633).
And again this court held such legislation unconsti-
tutional. *People* v. *Brock*, 149 Mich. 464 (119 Am.
St. Rep. 684). There is an air of finality in the
language of Mr. Justice HOOKER, who wrote for the
court, when he used the following language in con-
cluding the opinion:

"Whatever may have been held by the courts of
other States, the cases of *Swart* v. *Kimball, supra,*
and *Hill* v. *Taylor,* 50 Mich. 551, settle the rule for
Michigan."

While these three decisions unequivocally negative
the power of the legislature to confer original juris-
diction upon counties other than those where the
crime was committed, this court, in recognition of
the right and the importance of the right to a trial
by a fair and impartial jury, has sustained the valid-
ity of a statute permitting the transfer of a case to
another county where a fair and impartial trial may
not be had in the county where the crime was com-
mitted. *People* v. *Peterson,* 93 Mich. 27; *People* v.
*Fuhrmann,* 103 Mich. 593; *Glinnan* v. *Judge of Re-
corder's Court,* 173 Mich. 674; *People* v. *Rich,* 237
Mich. 481. This court has likewise recognized the
validity of legislation which extended jurisdiction
over a small strip adjoining the county line (*People*

v. *Donaldson,* 243 Mich. 104), quite necessary and important in early days when section lines had not been definitely established, and to legislation which extends jurisdiction over the Great Lakes (*Andrews* v. *Ellsworth,* 190 Mich. 157), which, of course, are not organized into counties and where without such legislation crime on the Great Lakes would go unpunished. But in none of the decisions on these subjects has the quoted language Mr. Justice Cooley used in deciding, and necessarily used in deciding, *Swart* v. *Kimball, supra,* been questioned. It is quite likely the provision before us would convenience the State; it might not seriously inconvenience defendants; I do not know. But I do know it will be an opening wedge thrust into the fundamental law, into the foundation of the building. Depriving our meanest citizens of their constitutional rights is not only an offense against them but also an offense against our institutions.

I think this conviction should be set aside without a new trial.

Wiest, J. (*for affirmance*). I am constrained to disagree with the conclusion reached by Mr. Justice Fellows.

The right of an accused to be tried in the jurisdiction where it is alleged he committed crime is ancient and valuable and should be maintained. But, in case of escape of a prisoner, in confinement under sentence to a State prison, is the mere place of the act to fix the venue or may the act itself, in its relation to the imprisonment, be declared by law to fix the venue? In order to be guilty of an escape, a prisoner need not break doors or walls; he escapes if he removes himself from the imposed restraint over his person and volition. In Clinton county the

defendant was a prisoner of the State, in fact under confinement, and in law considered in the State prison. It is true that he departed from custody in Clinton county, but his escape was from imprisonment in the State prison, and such escape, and not the mere place of his departure, was the gist of the offense, and he cannot be heard to say that he has been deprived of a constitutional right by trial in Jackson county.

In *Bradford* v. *Glenn, Judge,* 188 Cal. 350 (205 Pac. 449), a prisoner, employed in road work, escaped in one county and the court held he could be tried in another county under a statute which provided that a charge of escape from a prison may be tried in any county in the State. It was there said:

"We are of the opinion that a person serving a sentence of imprisonment in a State prison is, in contemplation of law, a prisoner therein, as well when at work outside under the surveillance of prison guards as when confined within its walls, so that if he escapes when outside he escapes from a prison, within the meaning of section 787."

To like effect see *People* v. *Vanderburg,* 67 Cal. App. 217 (227 Pac. 621).

I think the statute valid, and the conviction should be affirmed.

NORTH, C. J., and FEAD, CLARK, McDONALD, POTTER, and SHARPE, JJ., concurred with WIEST, J.