PEOPLE *v.* SOUTHWICK.

1. CRIMINAL LAW—VENUE—CHANGE OF VENUE.
   General rule that an accused has a right to be tried in the
   jurisdiction where it is alleged he committed crime is subject
   to certain well-recognized exceptions such as common jurisdic-
   tion of certain counties of all offenses committed on the
   waters of the Great Lakes, concurrent jurisdiction of adjoin-
   ing counties over border line cases and change of venue on
   motion of prosecution.

2. SAME—VENUE—STATUTES—ABORTION.
   Statute authorizing prosecution of offense in either the county
   where a wound was inflicted or poison administered or county
   where death therefrom occurred *held,* broad enough to cover
   case in which accused was charged with having unlawfully
   procured miscarriage in one county and authorize prosecution
   in another county where death occurred (3 Comp. Laws 1929,
   § 17123).

3. SAME—PROBABLE CAUSE—EXAMINING MAGISTRATE.
   What constitutes probable cause for holding an accused for trial
   is for determination upon the facts of each case as it is
   brought before the examining magistrate.

4. SAME—PROBABLE CAUSE—EVIDENCE.
   In prosecution for manslaughter by abortion, evidence *held,* suffi-
   cient to sustain finding of probable cause by justice of the
   peace that crime was committed and defendant committed it.

5. SAME—APPEAL AND ERROR—INDICTMENT AND INFORMATION—
   QUESTIONS REVIEWABLE.
   Claim of error in information, raised for first time in brief
   filed in the Supreme Court, will not be considered (3 Comp.
   Laws 1929, § 17290).

6. HOMICIDE—INDICTMENT AND INFORMATION—MANSLAUGHTER BY
   ABORTION.
   In prosecution for manslaughter by abortion it is not required
   that prosecution prove it was not necessary to procure mis-
   carriage, hence information failing to negative such necessity
   was not insufficient on that account (Act No. 328, § 14, 1931).

7. SAME—MANSLAUGHTER BY ABORTION—EVIDENCE—QUESTION FOR JURY.

   In prosecution for manslaughter by abortion, evidence *held*, sufficient to present question of fact to jury as to guilt or innocence of the defendant.

Appeal from Oakland; Gillespie (Glenn C.), J. Submitted April 11, 1935. (Docket No. 105, Calendar No. 37,638.) Decided June 3, 1935.

Dr. Charles Southwick was convicted of manslaughter. Affirmed.

*Frank L. Blackman,* for appellant.

*Harry S. Toy,* Attorney General, and *Edmund E. Shepherd* and *Peter J. Monaghan, Jr.,* Assistants Attorney General, for the people.

EDWARD M. SHARPE, J. The appellant is a physician residing and practicing in Springport, Jackson county, Michigan. On the 25th day of July, 1933, one Aletha Hopps, a married woman, accompanied by Mildred Roberts of Berkley, Michigan, drove to Springport, Michigan, where Mrs. Hopps consulted Dr. Southwick, the appellant herein. She had been pregnant for about three months and was treated at this time by Dr. Southwick in his office.

Mrs. Hopps died August 1, 1933. An autopsy was held and a determination made that she had been pregnant about three months; that the cause of her death was acute peritonitis and acute metritis resulting from an infected uterus caused by an interrupted pregnancy.

Dr. Southwick was charged, tried and convicted in Oakland county of manslaughter by abortion upon Aletha Hopps. The complaint charged that defend-

ant did, on the 25th day of July, A. D. 1933, in the
village of Springport, in the county of Jackson, "wil-
fully and unlawfully administer to Aletha Hopps,
certain medicines, drugs and substances or use cer-
tain instruments in and upon the body of the said
Aletha Hopps, with intent to procure the miscarriage
of the said Aletha Hopps, she the said Aletha Hopps
being then and there a pregnant woman. The ad-
ministering of said medicines, drugs and substances
by the said Dr. Southwick as aforesaid not being
then and there necessary to preserve the life of said
Aletha Hopps and not being therefore advised by
two physicians to be necessary for said purpose."

On September 20, 1933, upon motion of the prose-
cuting attorney, the following amended information
was filed:

"Dr. Charles Southwick late of the village of
Springport in the county of Jackson and State of
Michigan heretofore, to-wit: on or about the 25th
day of July, A. D. 1933, at the village of Springport
in the county of Jackson aforesaid, did then and
there wilfully and unlawfully administer to Aletha
Hopps, certain medicines, drugs and substances and
(the original information contained in word 'or' in-
stead of 'and') use certain instruments in and upon
the body of the said Aletha Hopps, with intent to
procure the miscarriage of the said Aletha Hopps,
she the said Aletha Hopps being then and there a
pregnant woman, and that the administering of said
medicines, drugs and substances and by the use of
certain instruments by the said Dr. Charles South-
wick as aforesaid not being then and there necessary
to preserve the life of said Aletha Hopps."

The words "and by the use of certain instru-
ments" were inserted and added to the amended in-
formation. Subsequent to the filing of this amended

information, defendant again renewed his motion to quash the information and discharge the defendant for the following reasons:

"1.   Because at the examination, held before H. Russell Holland, a justice of the peace for the city of Pontiac, on the 6th day of September, 1933, there was not sufficient evidence produced by the people to establish probable cause that a crime was committed, and that this defendant committed it.

"2.   Because there was no testimony produced by the people at said examination to show that any crime known to the statutes of this State had been committed, and for the further reason that the amended information, as filed by the prosecuting attorney, does not charge respondent with any crime known to the law.

"3.   Because this court has no jurisdiction to hear said matter for the following reason: That the information alleges, and the testimony at the examination shows that if any crime was committed, which is chargeable to the defendant, it was committed in Jackson county, and he is entitled to a trial by jury in said county."

The general rule relative to jurisdiction is well settled in *People* v. *Richards,* 247 Mich. 608, wherein the court said: "the right of an accused to be tried in the jurisdiction where it is alleged he committed crime is ancient and valuable and should be maintained." However, to this general rule there are certain well recognized exceptions. We have upheld legislative enactments which have authorized the prosecution of offenses in counties other than those in which the offense was actually committed.

Thus, certain counties of the State have been given a common jurisdiction of all offenses committed on the waters of the Great Lakes, and these provisions

have been sustained as against constitutional objections. 1 Comp. Laws 1929, §§ 1104–1108; *Andrews* v. *Ellsworth,* 190 Mich. 157. Also this court has sustained acts of the legislature giving to adjoining counties concurrent jurisdiction over border line cases. *Bayliss* v. *People,* 46 Mich. 221; *People* v. *Hubbard,* 86 Mich. 440. This court has upheld laws which authorize a change of venue in criminal proceedings. *People* v. *Peterson,* 93 Mich. 27; and has sustained a change of venue on motion of prosecuting officers, *Glinnan* v. *Judge of the Recorder's Court of Detroit,* 173 Mich. 674. So, too, trial by jury may be waived when authorized by statute. *People* v. *Henderson,* 246 Mich. 481.

Section 17123, 3 Comp. Laws 1929, provides:

"If any mortal wound shall be given or other violence or injury shall be inflicted, or any poison shall be administered in one county by means whereof death shall ensue in another county, the offense may be prosecuted and punished in either county."

The defendant in the instant case was charged with having "wilfully and unlawfully" used certain instruments in and upon the body of a pregnant woman, with intent to procure a miscarriage, and that he did thereby inflict upon her certain injuries of which she died. The wilful injuries were inflicted in Jackson county and death occurred in Oakland county. We think the statute is broad enough to cover this class of cases.

The defendant also contends that at the examination held before the justice of the peace there was not sufficient evidence produced by the people to establish probable cause that a crime was committed and that the defendant committed it. In *People* v. *Dellabonda,* 265 Mich. 486, 490, the general rule is well stated by Mr. Justice Potter:

"To authorize the examining magistrate to bind appellant over for trial there must have been good reason to believe appellant guilty of the crime charged. Some cases hold a *prima facie* case against the accused must be made out. This court has not defined what constitutes probable cause, leaving each case to be determined upon its facts."

When the examining magistrate committed the respondent for trial in the circuit court, he had before him evidence of the pregnancy of the deceased; testimony of a competent physician that she died from acute peritonitis probably caused by streptococci bacteria which was probably introduced into the uterus by means of abortive instruments; the fact that she had visited the defendant and consulted him in his professional capacity; that she had disclosed to him her pregnant condition, and asked him what he could do about it; that she had entered his private office for approximately 15 or 20 minutes; that she was on an examining table; that a witness observed an instrument which she called a dilator; that the patient had to lie down for 10 minutes after the treatment, that a fee was paid; that the woman was instructed to remove the "packing" when she returned home. We think that the justice of the peace is sustained in his finding of probable cause.

Defendant further contends that the original complaint, warrant, return of the justice, and the information set up that the abortion was committed through the use of medicine, drugs and substances *or* the use of an instrument; that the employment of the disjunctive nullified the allegation; that complaint, warrant and information failed to allege that the use of such instrument was not then and there necessary to preserve the life of the pregnant woman, thus neglecting to negative an exception contained in

the enacting clause of the statute. Act No. 328, § 14, Pub. Acts 1931.

An examination of the record discloses that when the defendant was arraigned he stood mute and a plea of not guilty was entered by the court.

On September 13, 1933, respondent's counsel filed a motion to quash, based on two grounds: (1) that at the preliminary examination, "there was not evidence produced by the people to establish probable cause;" (2) that the offense was committed in Jackson county, and the circuit court for the county of Oakland had no jurisdiction. In this motion to quash it is not claimed that the information averred no offense known to the law; or that disjunctives were employed; or that the information failed to negative statutory exception. The points now claimed were not raised. Nor were they raised on September 28, 1933, when counsel for defense filed a motion to quash the amended information.

Moreover, 3 Comp. Laws 1929, § 17290, provides:

"No indictment shall be quashed, set aside or dismissed or motion to quash be sustained or any motion for delay of sentence for the purpose of review be granted, nor shall any conviction be set aside or reversed on account of any defect in form or substance of the indictment, unless the objection to such indictment, specifically stating the defect claimed, be made prior to the commencement of the trial or at such time thereafter as the court shall in its discretion permit.

"The court may at any time before, during or after the trial amend the indictment in respect to any defect, imperfection or omission in form or substance or of any variance with the evidence."

We think the issue involved here is similar to that stated in *People* v. *Spence*, 250 Mich. 573, where we said:

"Defendant's counsel objected to the proposed amendment on the ground that the information before amendment did not charge any offense and that the accused had not had an examination on the offense charged in the amended information. Defendant did not ask for a postponement or a continuance of the trial, nor did he ask that the case be remanded to the magistrate for further examination."

In the case at bar, defendant stood mute when arraigned upon the information; on the motion of the prosecutor, an amended information was filed; defendant's counsel announced that he was ready for trial, requested no continuance, and raised no objection to proceeding without a formal arraignment. He raises the question for the first time in a brief filed in this court and under the authority of *People v. Spence, supra,* the objection may not now be considered.

The act (Act No. 328, § 14, Pub. Acts 1931) under which appellant was prosecuted provides:

"Any person who shall wilfully administer to any pregnant woman any medicine, drug, substance or thing whatever, or shall employ any instrument or other means whatever, with intent thereby to procure the miscarriage of any such woman, unless the same shall have been necessary to preserve the life of such woman, shall be guilty of a felony, and in case the death of such pregnant woman be thereby produced, the offense shall be deemed manslaughter.

"In any prosecution under this section, it shall not be necessary for the prosecution to prove that no such necessity existed."

Under this section the people were not required to prove the lack of necessity to preserve life and a failure to allege it did not deprive defendant of his constitutional right to be informed of the nature of

the accusation. The original information set out all the elements constituting the offense.

Defendant next contends that there was not sufficient evidence produced at the trial of this cause to prove his guilt beyond all reasonable doubt. However, there was no motion for a directed verdict on the ground that a *prima facie* case had not been established at the close of the people's case.

Mrs. Roberts, a witness produced on behalf of the people, testified in substance that Mrs. Hopps and she saw Dr. Southwick in his office at about 5 o'clock on July 25, 1933. Mrs. Hopps told appellant that she was in a pregnant condition and about three months along and asked him what he could do about it. She then entered the private office of Dr. Southwick and remained there with him for about 15 or 20 minutes. When Mildred Roberts entered the private office Mrs. Hopps was lying down on an examination table generally in doctor's offices, a dilator was lying on the same table. Mrs. Hopps was told to lie down for 10 minutes and was instructed to remove the "packing" when she returned home and to call a physician. A fee of $10 was paid to Dr. Southwick. However, before leaving the office Mrs. Hopps, at the suggestion of Dr. Southwick, signed a statement the substance of which was that Dr. Southwick was not criminally responsible for the condition that Mrs. Hopps was in and that she, Mrs. Hopps, used a catheter on herself.

In addition, she testified as follows:

"*Q.* To refresh your recollection, was there anything said by Dr. Southwick about the price of the operation?

"*A.* He said there was a $25 job for $10. * * *

"*Q.* To refresh your recollection, Mrs. Roberts, did Dr. Southwick at that time tell Mrs. Hopps that

in case a physician was called to say that she performed the operation herself?

"*A.* Yes.

"*Q.* He did say that?

"*A.* Yes."

Dr. Beck, a witness produced by the people, testified on direct examination as follows:

"*Q.* Doctor, from your professional experience and the examination you made at that time, what, in your opinion, was the cause of the interrupted pregnancy?

"*A.* Instrumental interference."

And on re-cross and re-direct examination he testified as follows:

"*Q.* Just a minute, Doctor Beck, at the time you first went to Mrs. Weeks' home, or Mrs. Roberts' home, to make your examination you said you took a history of that case?

"*A.* Yes.

"*Q.* Will you state whether or not Mrs. Hopps told you at that time that she used a catheter upon herself?

"*A.* She did.

"*Q.* Doctor, did you later discuss this subject with Mrs. Hopps?

"*A.* Yes.

"*Q.* What did you say to her or what did she say to you?

"*A.* I said a short time afterwards, I said to her that 'You didn't do this yourself, did you?' She says 'No, some doctor did it.'

"*Q.* Any further conversation?

"*A.* Yes.

"*Q.* What was it?

"*A.* She mentioned—I asked her why she had told me that and she said that the doctor had told her to tell that to anyone who may question her concerning it."

Dr. Weller, another witness produced by the people, testified as follows:

"I found no evidence of venereal diseases or syphilis when I made my examination of the organs of Aletha Hopps. The condition of Aletha Hopps concerning the infection which I have testified to that I found could not have been produced by uncleanliness of the body but that infection could have been produced by unclean instruments."

We think there was sufficient evidence to present a question of fact to the jury as to the guilt or innocence of the defendant.

The judgment of the lower court is affirmed.

POTTER, C. J., and NELSON SHARPE, NORTH, FEAD, WIEST, BUTZEL, and BUSHNELL, JJ., concurred.