# Syllabus

Chief Justice:
Bridget M. McCormack

Chief Justice Pro Tem:
David F. Viviano

Justices:
Stephen J. Markman
Brian K. Zahra
Richard H. Bernstein
Elizabeth T. Clement
Megan K. Cavanagh

**This syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader.**

Reporter of Decisions:
Kathryn L. Loomis

## PEOPLE v McBURROWS

Docket No. 157200. Argued on application for leave to appeal April 11, 2019. Decided July 15, 2019.

Romon B. McBurrows was charged in the Monroe Circuit Court with one count of delivery of a controlled substance causing death, MCL 750.317a, in connection with the death of Nicholas Abraham. Abraham, a resident of Monroe County, had driven an acquaintance to a house in Wayne County where the acquaintance bought heroin from defendant. Abraham and the acquaintance used some of the heroin in a nearby parking lot and then returned to their homes. Abraham was found unresponsive the next morning and was pronounced dead later that day. An autopsy concluded that Abraham had died from an overdose of fentanyl, which is sometimes mixed with heroin. Defendant filed a motion disputing Monroe County as a proper venue, and the trial court, Daniel White, J., denied the motion. Defendant then applied for leave to appeal on an interlocutory basis in the Court of Appeals, which granted leave and stayed the trial court proceedings pending the appeal. The Court of Appeals, TALBOT, C.J., and BORRELLO and RIORDAN, JJ., reversed, holding that venue was proper in Wayne County, where defendant allegedly delivered the heroin, and that venue was not proper in Monroe County under either MCL 762.5 or MCL 762.8. *People v McBurrows*, 322 Mich App 404 (2017). The prosecution appealed in the Supreme Court, which ordered and heard oral argument on whether to grant the application or take other action. 501 Mich 1073 (2018).

In a unanimous opinion by Justice CLEMENT, the Supreme Court, in lieu of granting leave to appeal, *held*:

In a prosecution for delivery of a controlled substance causing death, venue is not properly laid in a county if the death, but not the delivery, occurred in that county.

1. A criminal trial should be by a jury of the county or city where the offense was committed. The parameters of this general rule are not codified in Michigan. While MCL 762.1 provides that the courts of this state that have jurisdiction and powers over criminal causes have the "jurisdiction and powers as are now conferred upon them by law," this language is too general to provide meaningful guidance. Instead, what is codified are certain exceptions to or expansions of the general rule, which allow venue in locations besides that provided for in the general rule. Thus, identifying a proper venue is a two-step process: first, the proper venue under the general rule must be identified; second, it must be determined whether a statutory exception permits

departure from the general rule. Although the general venue rule has at times been stated in permissive terms, in the absence of an applicable statutory exception, that the trial be held in the county or city where the offense was committed is a mandatory aspect of criminal venue in Michigan that derives from the continuing constitutional guarantee of the preexisting common-law right to trial by jury.

2. Under federal law, which constitutionally requires that federal criminal trials be held in the state where the crimes were committed, the location of the crime is determined from the nature of the crime alleged and the location of the act or acts constituting it. One method for making this determination is the "verb test," in which identifying the essential verb in the statute creating a crime is the critical inquiry in identifying the proper venue for a federal prosecution. However, the Supreme Court has stated that this test cannot be applied rigidly, to the exclusion of other relevant statutory language, because the proper inquiry is into the nature of the offense. In this case, whether emphasizing the key verbs or inquiring into the nature of the offense, a violation of MCL 750.317a occurs at the place of the delivery of the controlled substance. This statute punishes an individual's role in placing the controlled substance in the stream of commerce, even when that individual is not directly linked to the resultant death; that consequences are felt elsewhere is immaterial, even if those consequences are required elements of the offense.

3. While the Court of Appeals correctly determined that the proper venue for prosecuting this case was Wayne County, it reached that conclusion using flawed reasoning. MCL 750.317a is properly understood as punishing an individual for the act of placing into the stream of commerce a controlled substance that ultimately causes an individual's death. Therefore, a violation of MCL 750.317a occurs at the place of the delivery of the controlled substance. This is true even though the crime is not complete until all of its elements occur, and both consumption of a controlled substance and death caused by that consumption are elements of the offense. Accordingly, MCL 750.317a is not merely a "penalty enhancement"; it is a crime with its own elements that is distinct from the crime established in MCL 333.7401.

4. Neither MCL 762.5 nor MCL 762.8 provides a basis for establishing venue in Monroe County. MCL 762.5 provides that "[i]f any mortal wound shall be given or other violence or injury shall be inflicted, or any poison shall be administered in 1 county by means whereof death shall ensue in another county, the offense may be prosecuted and punished in either county." The word "inflict" is defined in part as "to impose as something that must be suffered or endured," and the word "administer" is defined in relevant part as "[t]o dispense, furnish, supply, or give . . . to the recipient." In this case, defendant neither imposed anything on the decedent nor gave anything to the decedent. Rather, it was alleged that defendant delivered certain substances to the decedent through an intermediary, with no allegation that defendant even was aware of the decedent's existence. He did not interact with the decedent in the fashion contemplated by MCL 762.5 or in the way the defendant did in *People v Southwick*, 272 Mich 258 (1935), which was distinguishable for that reason. Similarly, venue was not properly laid in Monroe County under MCL 762.8, which provides: "Whenever a felony consists or is the culmination of 2 or more acts done in the perpetration of that felony, the felony may be prosecuted in any county where any of those acts were committed or in any county that the defendant intended the felony or acts done in perpetration of the felony to have an effect." For MCL 762.8 to apply here, there must have been an act done in perpetration of the alleged felony in Monroe County by defendant or his agent. There was,

however, no allegation that defendant endeavored to deliver the heroin to the decedent or that he intended the decedent's death, nor was it alleged that the decedent intended to die or coordinated his actions with defendant in any way. In the absence of some indication that the decedent was implicated in or culpable for defendant's action, he has not done something in perpetration of defendant's offense for purposes of MCL 762.8.

Court of Appeals judgment affirmed; case remanded for further proceedings.

©2019 State of Michigan

# OPINION

Chief Justice:
Bridget M. McCormack

Chief Justice Pro Tem:
David F. Viviano

Justices:
Stephen J. Markman
Brian K. Zahra
Richard H. Bernstein
Elizabeth T. Clement
Megan K. Cavanagh

FILED July 15, 2019

S T A T E   O F   M I C H I G A N

SUPREME COURT

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellant,

v                                    No. 157200

ROMON BERRY McBURROWS,

      Defendant-Appellee.

BEFORE THE ENTIRE BENCH

CLEMENT, J.

In this case, we consider whether, in a prosecution for delivery of a controlled substance causing death, venue is properly laid in a county if the death, but not the delivery, occurred in that county. We conclude that venue in such circumstances is not proper, and so we affirm the conclusion of the Court of Appeals in this regard and remand for further proceedings not inconsistent with this opinion.

## I. FACTS AND PROCEDURAL HISTORY[1]

On December 12, 2016, Nicholas Abraham—a resident of Monroe County—contacted an acquaintance, William Ingall, about procuring some heroin. Abraham picked up Ingall, and the two traveled to a house in Detroit. Abraham gave Ingall money, and Ingall went into the house to purchase heroin from defendant, Romon McBurrows. Abraham and Ingall then went to a nearby laundromat parking lot, where they consumed some of the heroin. Ingall noted that the heroin seemed unusually strong, and he warned Abraham to be careful when consuming it. Abraham took Ingall home and then returned to his own home, in Monroe County. Upon arriving at home at about 10:00 p.m., Abraham provided some heroin to his wife, Michelle, who used it and passed out. When she awoke in the early morning hours of December 13, she found Abraham unresponsive, and after failing to resuscitate him, she called the authorities, who pronounced him dead that same day. An autopsy ultimately concluded that Abraham's death was caused by fentanyl toxicity—fentanyl being a substance sometimes mixed with heroin.

Defendant was charged in Monroe County with one count of delivery of a controlled substance causing death. He filed a motion disputing Monroe County as a proper venue.[2] The trial court denied the motion. Defendant then filed an application for leave to appeal

---

[1] Because trial has not yet been held, there is no jury verdict in this case. Defendant maintains that he is innocent of the crimes with which he has been charged but, for the sole purpose of testing venue, accepts the People's allegations as true.

[2] Defendant titled his motion a "motion to dismiss for lack of jurisdiction." The trial court and Court of Appeals recharacterized it as a venue challenge. Defendant does not challenge that recharacterization in this Court.

2

on an interlocutory basis in the Court of Appeals, which granted leave and stayed the trial court proceedings pending the appeal.[3] The Court of Appeals ultimately reversed the judgment of the trial court. *People v McBurrows*, 322 Mich App 404; 913 NW2d 342 (2017). The People then appealed in this Court, and we ordered argument on the application as to whether, on these facts, Monroe County was a proper venue for this criminal trial. *People v McBurrows*, 501 Mich 1073 (2018).

## II. STANDARD OF REVIEW

"A trial court's determination regarding the existence of venue in a criminal prosecution is reviewed de novo." *People v Houthoofd*, 487 Mich 568, 579; 790 NW2d 315 (2010). This case also involves certain venue statutes, the interpretation of which we also review de novo. *Tryc v Mich Veterans' Facility*, 451 Mich 129, 145; 545 NW2d 642 (1996).

## III. ANALYSIS

A criminal "trial should be by a jury of the county or city where the offense was committed." *People v Lee*, 334 Mich 217, 226; 54 NW2d 305 (1952). See also 4 LaFave et al, Criminal Procedure (4th ed), § 16.1(c), pp 777-778 ("American jurisdictions . . . all utilize the same formula for designating the particular district in which the prosecution must be initiated and trial held[:] that district in which the 'crime shall have been committed.' "). This is known as "[t]he 'crime-committed' formula." *Id.* at 778. The parameters of this general rule are not, however, codified in Michigan. While MCL 762.1

---

[3] *People v McBurrows*, unpublished order of the Court of Appeals, entered July 13, 2017 (Docket No. 338552).

provides that "[t]he various courts . . . of this state now having jurisdiction and powers over criminal causes, shall have such jurisdiction and powers as are now conferred upon them by law," this language is too general to provide meaningful guidance. Cf. *People v Milton*, 393 Mich 234, 245; 224 NW2d 266 (1974) ("The language concerning the jurisdiction of the courts to try criminal cases embodied in [MCL 762.1] is so general that one cannot readily determine whether the circuit court's jurisdiction in criminal cases is constitutionally vested, derives from the common law, the Judicature Act . . . , or the Code of Criminal Procedure."). Instead, what *is* codified are certain exceptions to or expansions of the "general rule," allowing venue in locations besides the location provided for in the "general rule." The People here rely on two of these statutory qualifications. Thus, identifying a proper venue is a two-step process: first, we must identify the proper venue under the general rule; second, we must determine whether the statutes on which the People rely permit departure from the general rule.

## A. MICHIGAN'S COMMON-LAW CRIMINAL VENUE RULE

The general venue rule is derived from the common law. Since statehood, each of our Constitutions has guaranteed the continuation of a preexisting right to trial by jury. See Const 1835, art 1, § 9 ("The right of trial by jury shall remain inviolate."); Const 1850, art 6, § 27 ("The right of trial by jury shall remain . . . ."); Const 1908, art 2, § 13 (same language as 1850); Const 1963, art 1, § 14 (same language as 1850 and 1908). In *Swart v Kimball*, 43 Mich 443, 448; 5 NW 635 (1880), we held that the right which "remains" is "the right as it existed before; the right to a trial by jury as it had become known to the previous jurisprudence of the State." In *Swart*, we confronted a statute providing that a

4

proper venue for prosecuting an individual who illegally cut timber on public lands was either " 'in the county where the offense was committed, or in such other county as the Commissioner of the State Land Office, or the Attorney General, shall, by written instructions to the prosecuting attorney thereof, direct.' " *Id*. at 445, quoting 1857 PA 100, § 5. We held that the statute, in "so far as it undert[ook] to authorize a trial in some other county than that of the alleged offense, [was] oppressive, unwarranted by the Constitution, and utterly void." *Id*. at 450. Several subsequent cases reemphasized *Swart*'s holding. See, e.g., *Hill v Taylor*, 50 Mich 549, 551; 15 NW 899 (1883) ("[I]t cannot be seriously claimed that the prosecution can be had in a county where the crime was not actually or in contemplation of law perpetrated. The constitutional guaranty on this subject is too plain to be controverted."); *People v Harding*, 53 Mich 48, 53; 18 NW 555 (1884) (Residence of jurors in the vicinage of the offense "has always been associated with the jury system in criminal cases in the jurisprudence of both England and America . . . ."); *People v Brock*, 149 Mich 464, 466; 112 NW 1116 (1907) ("It would be a startling innovation should we say that the legislature has power to subject a person charged with crime to prosecution in any one of several counties . . . ."); *People v Olson*, 293 Mich 514, 515; 292 NW 860 (1940) ("After these [illegally undersized] fish were shipped by defendant [in Benzie County] he was not in Newaygo county and cannot, therefore, be prosecuted in that county upon any theory of constructive possession of the fish in Newaygo county.").

Consequently, Michigan's "crime committed" formula is a function of the constitutional provision that "[t]he right of trial by jury shall remain," which is to say, it continues from its common-law origins. See also Const 1963, art 3, § 7 ("The common law and the statute laws now in force . . . shall remain in force until they expire by their

5

own limitations, or are changed, amended or repealed."). Although we have at times said that "trial *should* be by a jury of the county or city where the offense was committed," *Lee*, 334 Mich at 226 (emphasis added), there should be no confusion that—in the absence of an applicable statutory exception—this is a mandatory aspect of criminal venue in Michigan. "The standard formula for setting venue calls for dividing the territory of the political entity . . . into geographical districts and then selecting as the appropriate venue that district in which the alleged crime was committed." LaFave et al, § 16.1(c), p 777. But how does one define where it is that a crime was committed?

We find federal law illuminating in this regard. Because there is a federal constitutional requirement that "[t]he Trial of all [federal] Crimes . . . shall be held in the State where the said Crimes shall have been committed," US Const, art III, § 2, cl 3, the stakes are particularly high in federal court for identifying where a crime was committed. The Supreme Court has said that "the *locus delicti* must be determined from the nature of the crime alleged and the location of the act or acts constituting it." *United States v Anderson*, 328 US 699, 703; 66 S Ct 1213; 90 L Ed 1529 (1946). One author suggested that identifying the "essential verb" in the statute creating a crime is the critical inquiry in identifying the proper venue for a federal prosecution. Dobie, *Venue in Criminal Cases in the United States District Court*, 12 Va L Rev 287, 289 (1926). This has given rise to the "verb test" that is influential in federal court. See generally LaFave, § 16.2(c), pp 842-848. The Supreme Court has stated, in the federal context, that while "the 'verb test' certainly has value as an interpretative tool, it cannot be applied rigidly, to the exclusion of other relevant statutory language," because the proper "inquiry [is] into the nature of the offense," *United States v Rodriguez-Moreno*, 526 US 275, 280; 119 S Ct 1239; 143 L Ed

6

2d 388 (1999).  That said, scrutinizing the key verbs in a criminal statute remains a common way to identify the conduct prohibited by a statute.  See *State v Kell*, 276 Ga 423, 425; 577 SE2d 551 (2003) ("Studying 'the key verbs which define the criminal offense in the statute is helpful in determining venue in doubtful cases.' ") (quotation marks and citation omitted); LaFave, § 16.2(c), p 848 ("While *Rodriguez-Moreno* rejected the use of literalism as an exclusive approach, it left uncertain the precise role of key-verb analysis in determining the 'nature of the crime.'  Some lower courts continue to look first to what the key verb suggests as to proper venue.").

It is clear, then, that to identify where defendant's crime was committed, we must scrutinize the statute creating defendant's offense.  Defendant is charged with violating MCL 750.317a, which provides:

> A person who delivers a schedule 1 or 2 controlled substance, other than marihuana, to another person in violation of . . . MCL 333.7401, that is consumed by that person or any other person and that causes the death of that person or other person is guilty of a felony punishable by imprisonment for life or any term of years.

We conclude that, whether emphasizing the "key verbs" or inquiring into "the nature of the offense," a violation of MCL 750.317a occurs at the place of the delivery of the controlled substance.  As we said in *People v Plunkett*, 485 Mich 50, 60; 780 NW2d 280 (2010), the statute punishes "an individual's role in placing the controlled substance in the stream of commerce, even when that individual is not directly linked to the resultant death."  That consequences are felt elsewhere is immaterial, even if those consequences are required elements of the offense.  This point is illustrated by *People v Duffield*, 387 Mich 300; 197 NW2d 25 (1972).  In *Duffield*, the victim was beaten in his home in Cass County and died

7

in Indiana. In analyzing the rules of jurisdiction and venue in the circuit courts, we held that "as between counties the common-law rule is that jurisdiction to prosecute for manslaughter or homicide lies at the place where the blow was given." *Id*. at 328. Thus, the mere fact that a death was *felt* in a county does not make that county the proper venue for trying the case; rather, the question is where the crime itself was committed. Accordingly, the death of the victim in Monroe County does not make Monroe County the proper venue under the general rule; instead, venue is proper in Wayne County because that is the county in which the crime itself was committed.

The Court of Appeals correctly determined that, under the general rule, the proper venue for prosecuting this case was Wayne County. However, it reached that conclusion using flawed reasoning.

> MCL 750.317a is properly understood as providing a penalty enhancement when a defendant's criminal *act*—the delivery of a controlled substance in violation of MCL 333.7401—has the *result* or *effect* of causing a death to any other individual. It is also clear, however, that a defendant's criminal act is complete upon the delivery of the controlled substance. Criminal liability has attached at that point. The effects of that completed action merely determine the degree of the penalty that a defendant will face despite the fact that a defendant need not commit any further acts causing the occurrence of any specific result (such as a death by drug overdose). [*McBurrows*, 322 Mich App at 413.]

The People argue that the Court of Appeals erred by characterizing MCL 750.317a as a "penalty enhancement," and we agree.[4] The Court of Appeals characterized MCL

---

[4] Indeed, it seems that the Court of Appeals was too fixated in general on defendant's own act. Consider a scenario in which a defendant installs a car bomb on a victim's car in one county, and the victim then drives to another county where the bomb goes off, killing the victim. As we said in *Duffield*, in the case of murder or manslaughter venue is proper at common law where the mortal wound is given, which would indicate that venue would be

8

750.317a as a "penalty enhancement" in reliance on this Court's statement in *Plunkett*, 485 Mich at 60, that MCL 750.317a "provides an additional punishment for persons who 'deliver[]' a controlled substance in violation of MCL 333.7401 when that substance is subsequently consumed by 'any . . . person' and it causes that person's death." The Court of Appeals read too much into our characterization of MCL 750.317a as providing "an additional punishment." It is only an "additional punishment" because MCL 333.7401 itself criminalizes the delivery of a controlled substance, without regard to the consequences, and punishes it to a lesser degree than MCL 750.317a. Nothing requires the Legislature to criminalize delivery of a controlled substance *at all*; it could content itself with only punishing a delivery *if* the consumption of the delivered substance causes a death. In such a scenario, *no crime at all* would have occurred—and criminal liability would not have attached—until the death occurred, which illustrates the necessity of the death as an element of the crime itself, rather than a mere basis for a penalty enhancement.

To express this concept another way, MCL 750.317a establishes a crime that is distinct from the crime established in MCL 333.7401, with its own elements. The elements of a prosecution under MCL 750.317a are: (1) delivery to another person, (2) of a schedule 1 or 2 controlled substance (excluding marijuana), (3) with intent to deliver a controlled substance as proscribed by MCL 333.7401, (4) consumption of the controlled substance by a person, and (5) death that results from the consumption of the controlled substance.[5]

---

proper *where the bomb went off*, rather than *where the defendant's act occurred*. As it happens, a violation of MCL 750.317a is committed where the defendant's wrongful act occurs, but that does not necessarily define where a crime is committed in all cases.

[5] At least one panel of the Court of Appeals has articulated the elements in a similar fashion.

Although MCL 750.317a is predicated on a violation of MCL 333.7401, it adds elements that make it a distinct offense. While, as noted, it would be entirely possible for the Legislature not to criminalize delivery of a controlled substance at all, the fact that it has— and has provided a different punishment when the consumption of the delivered substance causes a death—illustrates that what the Court of Appeals characterized as a "penalty enhancement" is in fact a distinct crime. An "element" of a crime is any "fact[] that increase[s] the prescribed range of penalties to which a criminal defendant is exposed." *Apprendi v New Jersey*, 530 US 466, 490; 120 S Ct 2348; 147 L Ed 2d 435 (2000) (quotation marks and citation omitted). Because death, if proved, "increase[s] the prescribed range of penalties," it is an "element" as defined in *Apprendi* and not a mere "sentencing consideration" or "penalty enhancement," meaning it "must be submitted to a jury, and proved beyond a reasonable doubt." *Id*.

All that being said, the Court of Appeals was correct to identify the county in which the delivery occurred—here, Wayne County—as the proper county in which a prosecution for a violation of MCL 750.317a should be pursued. In a prosecution for delivery of a controlled substance causing death, the proper venue at common law is in the county where the delivery occurred.

### B. MICHIGAN'S CRIMINAL VENUE STATUTES

Having identified a proper venue for this case under the general rule, we now must turn to our statutory venue rules. *Swart* and its progeny held that a defendant has a

---

See *People v Olger*, unpublished per curiam opinion of the Court of Appeals, issued June 27, 2017 (Docket Nos. 331705 and 331876), p 17.

constitutional *right*—as a preservation of the common law—to be prosecuted in the county where an offense occurs. This would defeat the validity of any inconsistent venue statute. However, what *Swart* did not acknowledge was that while our first Constitution *both* preserved a right to a trial by jury *and* guaranteed criminal defendants "an impartial jury of the vicinage," Const 1835, art 1, § 10, our subsequent Constitutions did not retain the vicinage requirement. On the basis of this lack of a vicinage requirement in our subsequent Constitutions, an early line of cases established a common-law exception to the right to be prosecuted in the county where an offense occurred: once proper venue was established, it could then be moved to another county for good cause shown. See *People v Peterson*, 93 Mich 27; 52 NW 1039 (1892); *People v Fuhrmann*, 103 Mich 593; 61 NW 865 (1895); see also *Glinnan v Detroit Recorder's Court Judge*, 173 Mich 674, 688; 140 NW 87 (1913) (opinion by BIRD, J.) ("For reasons which are historical, the rule that one charged with crime has a right to be tried by a jury of the vicinage has taken a fast hold on our system of jurisprudence. The rule itself is not in dispute; only its exceptions are questioned.").[6]

---

[6] More nebulous precedents include *Lyle v Cass Circuit Judge*, 157 Mich 33; 121 NW 306 (1909), and *People v Rich*, 237 Mich 481; 212 NW 105 (1927). In *Lyle*, the trial court denied a motion for a change of venue and the relator filed a mandamus action in this Court to compel a different result. The lead opinion by Justice HOOKER denied the writ of mandamus, asserting "that a judge's discretion is not reviewable in any manner . . . ." *Lyle*, 157 Mich at 36. A majority of the justices "concur[red] in the result reached by Justice HOOKER, but d[id] not desire to be understood that in no case can there be a review of action involving an abuse of discretion; such question being reviewable on error." *Id*. at 42 (opinion by OSTRANDER, MCALVAY, & BROOKE, JJ.). In *Rich*, an equally divided Court also affirmed a change of venue on motion.

11

This discrepancy between the Constitution of 1835 and subsequent Constitutions also created space for the Legislature to enact *statutory* venue rules that did not entirely track the "crime committed" requirement.[7] We thus upheld a statute providing for prosecution of a crime in either county when a crime was committed within 100 rods of the boundary between the counties. See *Bayliss v People*, 46 Mich 221; 9 NW 257 (1881); *People v Hubbard*, 86 Mich 440; 49 NW 265 (1891); *People v Donaldson*, 243 Mich 104; 219 NW 602 (1928). We also held that it was proper for the Legislature to "giv[e] to certain counties bordering on the Great Lakes a common jurisdiction of all offenses committed on such lakes within this State." *People v Bouchard*, 82 Mich 156, 159; 46 NW 232 (1890). See also *People v Coffee*, 155 Mich 103, 107; 118 NW 732 (1908).

> The reason for creating an enlarged vicinage for the trial of offenses committed upon the Great Lakes is obvious, on account of the great difficulty which would be encountered in determining in which of the bordering counties the commission of the act took place. It is quite evident that the necessity of the situation was what gave rise to this enlarged vicinage. While the general rule is that the county is the vicinage, there are some exceptions thereto where justice demands it. . . .
>
> . . . The fixing of the boundaries of a vicinage is a legislative function, and it has been exercised in this State by the legislature declaring that the county shall be the unit in which jurors shall be selected to try offenses committed therein, and this rule has been steadily and consistently adhered to, save in unusual cases where the proper administration of justice demanded an enlarged jurisdiction. We see nothing in this section which indicates that the legislature has exceeded its powers. It has created an enlarged vicinage for the trial of all offenses committed upon the waters of Lake Huron, because the vicinage of the county would be an impracticable one. If these jurisdictions are larger than they should be, it must be remedied

---

[7] After all, "[i]t is axiomatic that the Legislature has the authority to abrogate the common law." *Trentadue v Buckler Automatic Lawn Sprinkler Co*, 479 Mich 378, 389; 738 NW2d 664 (2007).

12

by the legislature, and not by the courts. [*Andrews v Ellsworth*, 190 Mich 157, 160-161; 156 NW 115 (1916).]

As exceptions to the *Swart* rule continued to mount, the camel's back was soon to break. In *People v Richards*, 247 Mich 608; 226 NW 651 (1929), we rejected a defendant's challenge to a statute providing that the proper venue in a prosecution for prison escape was not in the county where the escape took place, but rather in the county where the administrative office of the prison was located. We wrote that while

> [i]t [was] true that he departed from custody in Clinton county, . . . his escape was from imprisonment in the State prison, and such escape, and not the mere place of his departure, was the gist of the offense, and he cannot be heard to say that he has been deprived of a constitutional right by trial in Jackson county. [*Id*. at 613.]

The dissent argued that *Swart* and its progeny were decisive, and "[o]nly by the adoption of a legal fiction, which to my mind is fallacious, can these decisions be circumvented, and it be held that a crime actually committed in Clinton county was in contemplation of law committed in Jackson county." *Id*. at 609 (FELLOWS, J., dissenting). Not long thereafter, the *Swart* decision itself was challenged as simply being poorly reasoned, in that it ignored that the Michigan Constitution of 1850 (and subsequent Constitutions) omitted a vicinage requirement. See Blume, *The Place of Trial of Criminal Cases: Constitutional Vicinage and Venue*, 43 Mich L Rev 59, 80-87 (1944). The Blume article also asserted that *Swart* misinterpreted the state of the common-law venue rules at the time Michigan became a state, such that there was substantially more legislative flexibility at common law to expand or alter venue rules than *Swart* acknowledged. *Id*.

The Blume criticism of *Swart* was ratified by this Court in *Lee*. We acknowledged that *Swart* "ha[d] been criticized on the ground that Justice COOLEY overlooked the fact

that the Michigan Constitution of 1850 had omitted the words, 'of the vicinage.' " *Lee*, 334 Mich at 225. We then noted that several cases since *Swart* "ha[d] shown a departure in certain instances from a strict application of the rule that the jury must be of the vicinage, or of the county," *id*., including *Bayliss*, *Hubbard*, *Peterson*, and *Glinnan*, along with *People v Southwick*, 272 Mich 258; 261 NW 320 (1935), and *People v Coapman*, 326 Mich 321; 40 NW2d 167 (1949), which had upheld prosecutions under MCL 762.5 (allowing for a prosecution in either the county where the injury occurs or the death results where "violence or injury shall be inflicted, or any poison shall be administered"). We concluded in *Lee* that " '[i]n the absence of any limitation by constitutional provision, it seems to be generally recognized that the power of a State legislature to fix the venue of criminal prosecutions in a county or district other than that in which the crime was committed is unrestricted.' " *Lee*, 334 Mich at 225, quoting Anno: *Constitutionality of Statute for Prosecution of Offense in County Other Than That in Which it was Committed*, 76 ALR 1034, 1035, § II.

In sum, then, when we said in *Lee* that a crime "should" be prosecuted where it was committed, we were recognizing a *requirement* that it be prosecuted where it was committed, even while expressly acknowledging the broad prerogative of the Legislature to enact statutes that provide for *alternative* venue. *Lee* recognized that what *Swart* had said was a *constitutional right*—trial in the county where a crime is committed—is instead a *default rule* that the Legislature is free to adjust statutorily.[8] That rule is grounded in the

---

[8] Thus, in *Richards*, we felt obliged to rationalize the venue statute at issue as being consistent with *Swart*, and resorted to what the dissent called a "legal fiction" to reach that result. *Richards*, 247 Mich at 609 (FELLOWS, J., dissenting). Were we to decide *Richards*

14

common law and focuses on identifying the one county where the crime was committed. However, the Legislature has the authority to specifically provide for other venues by statute, and it has done so in Chapter II of the Code of Criminal Procedure, which contains several venue rules for criminal prosecutions that supplement the general rule. The People here allege that venue is properly laid in Monroe County under either of two of these provisions.

The first provision the People cite, MCL 762.5, provides that "[i]f any mortal wound shall be given or other violence or injury shall be inflicted, or any poison shall be administered in 1 county by means whereof death shall ensue in another county, the offense may be prosecuted and punished in either county." The People theorize that the delivery of the controlled substance in this matter—which occurred in Wayne County—was akin to a "ticking time bomb," such that the delivery of it qualified as giving a mortal wound that can be prosecuted under the statute in the county where the death occurred. They also argue that heroin is a "poison" under the statute, such that, again, the death that resulted from consuming it can be prosecuted in the county where the death occurred. In support, they cite *Southwick*. In *Southwick*, the decedent traveled from Oakland County to Jackson County where the defendant doctor provided her with unlawful medical treatment. *Southwick*, 272 Mich at 260. About a week later, the decedent passed away in Oakland County. We affirmed the propriety of charging the defendant in Oakland County under the venue statute now codified at MCL 762.5. The People argue that just as the procedure

---

again, *Lee* would make clear that the Legislature is free to adopt venue statutes, relieving us of the need to reconcile any given venue statute to the *Swart* rule.

15

in *Southwick* was a mortal wound, "the delivery of these dangerous controlled substances was a mortal wound or injury."

Neither theory advanced by the People is supported by *Southwick*. The statute requires that a mortal wound be *inflicted*, or a poison[9] be *administered*. The word "inflict" is defined as "[t]o lay on as a stroke, blow, or wound; to impose as something that must be suffered or endured; to cause to be borne." *Oxford English Dictionary* (2d ed). The word "administer" is defined in relevant part as "[t]o dispense, furnish, supply, or give . . . to the recipient[.]" *Id*. Neither occurred here. Defendant neither imposed anything *on* the decedent nor gave anything *to* the decedent.

Our conclusion that venue under MCL 762.5 requires more direct interaction with the victim is consistent with *Southwick*, in which the defendant's unlawful medical treatment was "wilful" and performed "upon the body" of the decedent. *Southwick*, 272 Mich at 262. Nothing in *Southwick* supports the People's theory in this case, because in *Southwick* it was alleged that the defendant had either acted directly upon the decedent's body or provided "medicines, drugs and substances," *id*. at 260, directly to her as part of a course of treatment. Here, by contrast, it is alleged that defendant *delivered* certain substances to the decedent, and only through an intermediary at that, with no allegation that defendant even was aware of the decedent's existence. He did not *interact with* the decedent in the way the defendant did in *Southwick*, or in the fashion contemplated by MCL 762.5.

---

[9] Given our analysis, we do not decide whether heroin is a "poison" for purposes of MCL 762.5.

16

The People also argue that venue is properly laid in Monroe County under MCL 762.8. That statute provides:

> Whenever a felony consists or is the culmination of 2 or more acts done in the perpetration of that felony, the felony may be prosecuted in any county where any of those acts were committed or in any county that the defendant intended the felony or acts done in perpetration of the felony to have an effect.

There is no argument here that defendant "intended" for any effects of his offense to be felt in Monroe County. The People argue, however, that an essential element of defendant's crime is the decedent's death, and that the decedent's death was caused by his consumption of the heroin. The People contend that the decedent's consumption of the heroin was thus an "act[] done in the perpetration of [defendant's] felony," in that it was an act which had to occur to satisfy all the elements of defendant's offense. The Court of Appeals concluded that MCL 762.8 does not apply here because "the alleged crime—with the exception of the sentencing enhancement for the death of [the decedent]—was complete at the point of sale," meaning "there was no further act to be committed 'in the perpetration of that felony[.]' " *McBurrows*, 322 Mich App at 415-416.

As noted in our discussion of identifying the proper venue under Michigan's default rule, we agree with the People that MCL 750.317a is not a "sentencing enhancement." Further, as we noted in our earlier discussion, the alleged crime here was *not* complete at the point of sale. Although we disagree with the Court of Appeals' reasoning, that Court correctly concluded that venue is not proper in Monroe County under MCL 762.8. For MCL 762.8 to apply, there must have been an "act[] done in the perpetration of [defendant's] felony" in Monroe County. The prosecution contends that venue is proper

17

because the decedent's acts of consuming the heroin and dying were also "acts done in perpetration" of MCL 750.317a. We disagree. "Perpetration" is defined as "[t]he action of perpetrating or performing (an evil deed); the committing (of a crime)[.]" *Oxford English Dictionary* (2d ed). It carries with it a connotation of culpability or blameworthiness, as though a part of the defendant's endeavor. Thus, the Legislature's use of the word "perpetration" serves to limit the application of MCL 762.8 to the conduct of a criminal actor or his agent.[10] But there is no allegation here that defendant endeavored to deliver this controlled substance to the decedent, or that he intended the decedent's death; nor is it alleged that the decedent intended to die or coordinated his actions with defendant in any way. In the absence of some indication that the decedent was *implicated* in or *culpable* for defendant's action, he has not done something in *perpetration* of defendant's offense. Consequently, MCL 762.8 is not an adequate basis for establishing venue in Monroe County—not because the crime was complete at the point of the delivery, but rather, because the decedent's acts (which were necessary to complete the elements of

---

[10] Cf. *Rodriguez-Moreno*, 526 US at 280 & n 4 (recognizing a distinction between "circumstance elements" and "conduct elements" in locating the proper venue for a federal criminal prosecution); *United States v Myers*, 854 F3d 341, 359 (CA 6, 2017) (Kethledge, J., concurring in part and dissenting in part) ("In determining where a crime was committed for purposes of constitutional venue, . . . the court looks to the place of the 'conduct elements' rather than to the place of any 'circumstance element[s]' of the offense."). While the victim's death in this matter was an essential element of the offense and must be proved beyond a reasonable doubt, it is analogous to the sort of "circumstance element" recognized by federal law that does *not* establish proper venue, rather than a "conduct element," which does.

the offense) were unconnected to defendant's and therefore did not implicate the decedent or make him culpable for defendant's behavior.[11]

## IV. CONCLUSION

Neither statute that the People cite is an adequate basis for venue in Monroe County. Consequently, while we disagree with the Court of Appeals' characterization of MCL 750.317a as a mere "penalty enhancement" statute, we agree with its conclusion that Wayne County is the proper county for the prosecution of this offense under the general rule. We further agree that under the facts of this case neither MCL 762.5 nor MCL 762.8 provides an exception to the general rule sufficient to establish venue in Monroe County, and we remand to the trial court for further proceedings not inconsistent with this opinion.

Elizabeth T. Clement
Bridget M. McCormack
Stephen J. Markman
Brian K. Zahra
David F. Viviano
Richard H. Bernstein
Megan K. Cavanagh

---

[11] The People also argue in this Court—for the first time—that "the Delivery of a Controlled Substance constitutes a conspiracy and acts in furtherance of the conspiracy occurred in Monroe County." We need not consider this argument, because "[i]ssues and arguments raised for the first time on appeal are not subject to review." *In re Forfeiture of Certain Personal Prop*, 441 Mich 77, 84; 490 NW2d 322 (1992). Moreover, MCL 762.8 requires that "the felony" the defendant is being prosecuted for be the same as "the felony" that occurred in multiple counties and gives rise to venue under MCL 762.8. But defendant is not charged with any conspiracy; consequently, while we express no opinion as to whether a conspiracy could be alleged on these facts, even if it *could*, MCL 762.8 would not apply here because no conspiracy *has* been alleged.

19