# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

ROMON BERRY MCBURROWS,

Defendant-Appellant.

FOR PUBLICATION
December 19, 2017
9:05 a.m.

No. 338552
Monroe Circuit Court
LC No. 17-243452-FC

Before: TALBOT, C.J., and BORRELLO and RIORDAN, JJ.

BORRELLO, J.

In this interlocutory appeal, defendant appeals by leave granted[1] the trial court's order denying his motion to dismiss. Defendant argued in the trial court as well as on appeal that the trial court lacked "jurisdiction."[2] Defendant is charged with one count of delivery of a controlled substance causing death (fentanyl), MCL 750.317a. For the reasons set forth in this opinion, we reverse and remand the matter to the trial court for further proceedings consistent with this opinion.

## I. BACKGROUND

This case arises out of the drug-related death of Nicholas Abraham. On December 12, 2016, Nicholas called William Ingall to tell Ingall that he was coming over because he wanted to get some heroin. Later that night, they traveled together in Nicholas's pickup truck to a house in Detroit to procure heroin from defendant. Once they arrived in the area, Ingall called defendant's cell phone and informed defendant that he wanted to "get some heroin." Nicholas gave Ingall $100, and he waited in his pickup truck while Ingall left and purchased heroin from defendant inside a nearby house. Ingall gave defendant $100, and defendant gave Ingall heroin that was wrapped up in paper.

---

[1] *People v McBurrows*, unpublished order of the Court of Appeals, entered July 13, 2017 (Docket No. 338552).

[2] As discussed below, defendant's argument is actually predicated on the claim that *venue* was improper in Monroe County.

-1-

Subsequently, Ingall returned to Nicholas's truck with the heroin, and they went to a nearby laundromat where they used the heroin. Ingall used approximately $20 worth of the heroin, and Nicholas used approximately $10 worth of the heroin. According to Ingall, the heroin "was really strong," and it "wasn't real bitter like the heroin would [sic] be." After Ingall noticed the strength of the heroin, he told Nicholas "to be careful with it."

Nicholas dropped Ingall off at Ingall's house and then went home. Nicholas lived in Monroe County with his wife, Michelle Abraham. After getting home at approximately 10:00 p.m. that evening, Nicholas put down two lines of heroin on a table and told Michelle to snort the heroin. Michelle passed out after she used the heroin. When she regained consciousness, she discovered that Nicholas was not breathing and tried unsuccessfully to resuscitate him. Nicholas was pronounced dead during the early morning hours of December 13, 2016. An autopsy was subsequently performed by Dr. Leigh Hlavaty of the Wayne County Medical Examiner's Office, who opined that Nicholas's death was caused by fentanyl toxicity. According to Detective Michael McClain of the Monroe County Sheriff's Office Vice Unit, fentanyl is sometimes used by heroin dealers as "a cutting agent to make the heroin more potent."

Defendant was charged with one count of delivery of fentanyl causing death and was bound over to the Monroe Circuit Court following his preliminary examination. Defendant subsequently moved to dismiss the prosecution's case on the ground that the trial court lacked "jurisdiction." Defendant contended that the trial court lacked jurisdiction over him because the only "act" that he allegedly committed—the delivery of fentanyl—occurred in Wayne County, and he did not commit any act in Monroe County since Nicholas's death was not an "act" committed by defendant.

A hearing was held on defendant's motion, and the trial court denied the motion. The trial court ruled that defendant could be tried in either Wayne County or Monroe County because elements of the charged offense occurred in both of those counties. The trial court further reasoned that venue was authorized in Monroe County because a "mortal wound" was inflicted by means of the drug transaction, which resulted in a death in Monroe County.

We granted defendant's application for leave to appeal, as well as his motion to stay the proceedings pending resolution of this appeal.[3]

As a threshold matter, we note that although defendant has characterized his challenge as one involving the trial court's "jurisdiction," the question presented in this appeal is actually whether *venue* was properly laid in Monroe County. "Jurisdiction is the power [of a court] to act." *People v Johnson*, 427 Mich 98, 106 n 7; 398 NW2d 219 (1986) (opinion by BOYLE, J.) (quotation marks and citations omitted; alteration in original). "Michigan circuit courts are courts of general jurisdiction and unquestionably have jurisdiction over felony cases." *People v Lown*, 488 Mich 242, 268; 794 NW2d 9 (2011), citing Const 1963, art 6, §§ 1 and 13, MCL 600.151, MCL 600.601, and MCL 767.1. However, venue refers to the location, or forum, in which the trial is to be held. See *Gross v Gen Motors Corp*, 448 Mich 147, 156; 528 NW2d 707

---

[3] *McBurrows*, unpub order.

(1995); *People v Webbs*, 263 Mich App 531, 533; 689 NW2d 163 (2004). Therefore, defendant's appellate argument that the trial court erred because Monroe County is not a proper county in which to try this case is clearly a venue challenge.[4]

## II. STANDARD OF REVIEW

"A trial court's determination regarding the existence of venue in a criminal prosecution is reviewed de novo." *People v Houthoofd*, 487 Mich 568, 579; 790 NW2d 315 (2010). "Venue is a part of every criminal prosecution and must be proved by the prosecutor beyond a reasonable doubt." *Webbs*, 263 Mich App at 533. "A trial court's ruling addressing a motion to dismiss is reviewed for an abuse of discretion." *People v Lewis*, 302 Mich App 338, 341; 839 NW2d 37 (2013). "An abuse of discretion occurs when the trial court chooses an outcome falling outside the range of principled outcomes." *Id*. (quotation marks and citation omitted).

Issues involving statutory interpretation are reviewed de novo. *Houthoofd*, 487 Mich at 579. "The primary purpose of a court when construing a statute is to discern and give effect to the Legislature's intent." *People v Rivera*, 301 Mich App 188, 192; 835 NW2d 464 (2013). "We begin by examining the plain language of the statute; where that language is unambiguous, we presume that the Legislature intended the meaning clearly expressed—no further judicial construction is required or permitted, and the statute must be enforced as written." *People v Williams*, 475 Mich 245, 250; 716 NW2d 208 (2006) (quotation marks and citation omitted). The words in a statute are interpreted "in light of their ordinary meaning and their context within the statute." *People v Peltola*, 489 Mich 174, 181; 803 NW2d 140 (2011).

## III. ANALYSIS

"The general venue rule is that defendants should be tried in the county where the crime was committed." *Houthoofd*, 487 Mich at 579. "[E]xcept as the legislature for the furtherance of justice has otherwise provided reasonably and within the requirements of due process, the trial should be by a jury of the county or city where the offense was committed." *Id*. (quotation marks and citation omitted; alteration in original).

Accordingly, to determine the county in which venue is proper, it is necessary to determine the county where the offense was committed. This determination in turn requires an examination of the statute that defendant was charged with violating.

The crime of delivery of a controlled substance causing death is defined in MCL 750.317a, which provides as follows:

> A person who delivers a schedule 1 or 2 controlled substance, other than marihuana, to another person in violation of section 7401 of the public health code, 1978 PA 368, MCL 333.7401, that is consumed by that person or any other

---

[4] The trial court also properly recognized that defendant's motion actually presented a venue challenge.

person and that causes the death of that person or other person is guilty of a felony punishable by imprisonment for life or any term of years.

In *People v Plunkett*, 485 Mich 50, 60; 780 NW2d 280 (2010), our Supreme Court explained that

[i]t is clear from the plain language of the statute that MCL 750.317a provides *an additional punishment* for persons who "deliver[ ]" a controlled substance in violation of MCL 333.7401 when that substance is subsequently consumed by "any . . . person" and it causes that person's death. It punishes an individual's role in placing the controlled substance in the stream of commerce, even when that individual is not directly linked to the resultant death.

Consequently, MCL 750.317a is a general intent crime, and as such does not require the intent that death occur from the controlled substance first delivered in violation of MCL 333.7401. Rather, the general intent required to violate MCL 750.317a is identical to the general intent required to violate MCL 333.7401(2)(a): the *delivery* of a schedule 1 or 2 controlled substance. [First emphasis added; other alterations in original.]

Thus, MCL 750.317a is properly understood as providing a penalty enhancement when a defendant's criminal *act*—the delivery of a controlled substance in violation of MCL 333.7401—has the *result* or *effect* of causing a death to any other individual. It is also clear, however, that a defendant's criminal act is complete upon the delivery of the controlled substance. Criminal liability has attached at that point. The effects of that completed action merely determine the degree of the penalty that a defendant will face despite the fact that a defendant need not commit any further acts causing the occurrence of any specific result (such as a death by drug overdose). Based on the plain language of the statute, establishing a defendant's violation of MCL 750.317a requires the prosecution to prove (1) the defendant's *act* of delivering a controlled substance in violation of MCL 333.7401 and (2) the *effect* that a person died as a result of consuming the controlled substance.

Establishing an act in violation of MCL 333.7401 with respect to a schedule 1 or schedule 2 controlled substance requires the prosecution to prove that the defendant delivered an amount of the controlled substance with knowledge that he was delivering a controlled substance. *People v Collins*, 298 Mich App 458, 462; 828 NW2d 392 (2012). " 'Deliver' or 'delivery' means the actual, constructive, or attempted transfer from 1 person to another of a controlled substance, whether or not there is an agency relationship." MCL 333.7105(1). Fentanyl is classified as a schedule 2 substance. MCL 333.7214(b).

In this case, the prosecution does not dispute that the alleged drug transaction between Ingall and defendant occurred in Detroit, within Wayne County. Ingall testified at the preliminary examination that while he was in Detroit, he gave defendant $100 in exchange for heroin. Presumably, this heroin was mixed with fentanyl. At that point, defendant's alleged criminal act—delivery of a controlled substance in violation of MCL 333.7401—was complete. *Plunkett*, 485 Mich at 60. The fact that Nicholas subsequently died may make defendant subject to prosecution under MCL 750.317a rather than MCL 333.7401, but that is not due to any further

act on defendant's part. *Id*. Because the alleged criminal offense was committed in Wayne County, venue is proper there. *Houthoofd*, 487 Mich at 579. Defendant did not commit any act in Monroe County, and venue could only be proper in Monroe County if authorized by an applicable exception to the general rule that venue lies in the county where the crime was committed. *Id*.

The prosecution argues on appeal that two statutes which are exceptions to the general rule regarding venue authorize venue being laid in Monroe County, where the death occurred.

First, the prosecution argues that venue is proper in Monroe County under MCL 762.8, which provides that

> [w]henever a felony consists or is the culmination of 2 or more acts done in the perpetration of that felony, the felony may be prosecuted in any county where any of those acts were committed or in any county that the defendant intended the felony or acts done in perpetration of the felony to have an effect.

In *Houthoofd*, 487 Mich at 580, our Supreme Court construed the former version of MCL 762.8, which provided as follows:

> whenever a felony consists or is the culmination of 2 or more acts done in the perpetration thereof, said felony may be prosecuted in any county in which any one of said acts was committed.

The *Houthoofd* Court held that the statute unambiguously stated that "when a felony consists of two or more acts, venue for prosecution of the felony is proper in any county in which any one of the *acts* was committed" and that the "statute *does not* contemplate venue for prosecution in places where the *effects of the act are felt*." *Id*. at 583-584 (emphasis added). The Court emphasized that "it is the *act* that constitutes the felony—rather than its effects—that gives rise to venue." *Id*. at 585. The Legislature subsequently amended MCL 762.8 to also authorize venue "in any county that the defendant *intended* the felony or acts done in perpetration of the felony to have an effect." 2013 PA 128 (emphasis added).

Here, defendant's alleged criminal *act* of delivering a controlled substance was complete upon concluding the transaction with Ingall, and this act took place entirely within Wayne County. There is no allegation that defendant committed any act in Monroe County. Because the alleged crime, with the exception of the sentencing enhancement for the death of Nicholas was complete at the point of the sale, *Plunkett*, 485 Mich at 60, there was no further act to be committed "in the perpetration of that felony." MCL 762.8. It was only the *effect* of Nicholas's death that made defendant subject to the potential of the additional punishment provided by MCL 750.317a. See *Plunkett*, 485 Mich at 60. In a prosecution under MCL 750.317a, it is not necessary for the prosecution to prove that a defendant intended for a death to occur, *Plunkett*, 485 Mich at 60, and there is no contention in this case that defendant harbored such an intent. Most importantly, there is no allegation or evidence that defendant *intended* such an effect to occur in Monroe County. MCL 762.8. Although MCL 762.8 was amended to authorize venue in a county where a defendant intended an act to have an effect, there still is no provision authorizing venue in a county where a defendant's act merely happens to have an effect.

Therefore, MCL 762.8 does not authorize laying venue in Monroe County in this case. *Houthoofd*, 487 Mich at 583-585.

Next, the prosecution argues that venue is proper in Monroe County under MCL 762.5, which provides that "[i]f any mortal wound shall be given or other violence or injury shall be inflicted, or any poison shall be administered in 1 county by means whereof death shall ensue in another county, the offense may be prosecuted and punished in either county." In support of this theory of venue, the prosecution relies on our Supreme Court's decision in *People v Southwick*, 272 Mich 258; 261 NW 320 (1935). In *Southwick*, our Supreme Court held that venue was proper in Oakland County for the defendant's manslaughter by abortion charge where the defendant performed an illegal abortion in Jackson County, and the victim subsequently died in Oakland County. *Id*. at 259-260, 262. Specifically, the amended information in that case stated that the defendant

> willfully and unlawfully administer[ed] to Aletha Hopps, certain medicines, drugs and substances and . . . use[d] certain instruments in and upon the body of the said Aletha Hopps, with intent to procure the miscarriage of the said Aletha Hopps, she the said Aletha Hopps being then and there a pregnant woman, and that the administering of said medicines, drugs and substances and by the use of certain instruments by the said Dr. Charles Southwick as aforesaid not being then and there necessary to preserve the life of said Aletha Hopps. [*Id*. at 260 (quotation marks omitted).]

In reaching its conclusion that venue was proper in Oakland County, the *Southwick* Court relied on a statute substantively identical to the current version of MCL 762.5. *Id*. at 262. The Court reasoned that the statute authorized venue in Oakland County because the "willful injuries were inflicted in Jackson county and death occurred in Oakland county." *Id*.

Here, the prosecution asks this Court to find that for purposes of MCL 762.5, the alleged delivery constituted a mortal wound or injury such that the delivery of heroin containing fentanyl corresponds to the acts undertaken by the defendant in *Southwick*. We begin our analysis of this request by noting that neither MCL 762.5 nor our Supreme Court in *Southwick* defined the terms "wound" or "injury." As such, we typically turn to dictionary definitions for terms that are not defined in the statute. *People v Perkins*, 473 Mich 626, 639; 703 NW2d 448 (2005). There we find that "wound" means "an injury to the body (as from violence, accident, or surgery) that typically involves laceration or breaking of a membrane (as the skin) and usu. damage to underlying tissues." *Merriam-Webster's Collegiate Dictionary* (11th ed). "Injury" is defined as "hurt, damage, or loss sustained." *Id*. Although controlled substances can certainly have dangerous effects, there is no evidence in the instant case that defendant had any contact with Nicholas or directly transferred a controlled substance to Nicholas. Quite unlike the facts in *Southwick* where defendant, in addition to being charged with having administered medicines to the decedent and also having used "certain instruments" upon the decedent causing her death, here, the record establishes that the fentanyl entered Nicholas's body and caused his death as a result of his own actions related to using heroin; there is no evidence that defendant put any drug into Nicholas. Rather, defendant provided Ingall with a controlled substance that ultimately made its way to Nicholas. Therefore, unlike the circumstances in *Southwick*, there is no factual

-6-

support here for this Court finding that defendant gave Nicholas a mortal wound or otherwise inflicted any injury *on him*.

The prosecution also asks this Court to find that heroin and fentanyl are poisons for purposes of MCL 762.5. The term "poison" is not defined within the statute, nor was this term defined by the *Southwick* Court. The term is also not defined in the Public Health Code, MCL 333.1101 *et seq.*, the Michigan Penal Code, MCL 750.1 *et seq.*, or the Code of Criminal Procedure, MCL 760.1 *et seq.* Turning to a dictionary, a "poison" is "[a]ny substance, either taken internally or applied externally, that is injurious to health or dangerous to life." *Stedman's Medical Dictionary* (26th ed).

Although the amount of fentanyl consumed by Nicholas was "dangerous to life" in this case, that does not mean that fentanyl is a *per se* poison in all cases. Fentanyl is classified as a schedule 2 controlled substance, MCL 333.7214(b), in part because it has legitimate medical uses, MCL 333.7213 (stating that a substance shall be placed in schedule 2 if it is found, among other things, that the "substance has currently accepted medical use in treatment in the United States, or currently accepted medical use with severe restrictions"). In contrast, heroin is not used for medical treatment and is accordingly classified as a schedule 1 controlled substance. MCL 333.7212(1)(b) (classifying heroin as a schedule 1 controlled substance); MCL 333.7211 ("The administrator shall place a substance in schedule 1 if it finds that the substance has high potential for abuse and has no accepted medical use in treatment in the United States or lacks accepted safety for use in treatment under medical supervision."). Although heroin may be injurious to a person's health, the evidence in this case showed that Nicholas's death was caused by fentanyl toxicity rather than by heroin.

Nonetheless, even accepting the argument that a given controlled substance could be considered a poison in a particular case, that does not mean that MCL 762.5 is automatically satisfied such that this statute may be relied on to establish venue when the crime at issue is delivery of a controlled substance causing death. Examining the term poison in context, *Peltola*, 489 Mich at 181, we note that this venue statute states that if "*any poison shall be administered in 1 county . . . .*" MCL 762.5 (emphasis added). This implies an *action* related to the poisoning. Considering the term poison when used as a verb rather than as a noun, we find that "poison" or "poisoning" means "to injure or kill with poison." *Merriam-Webster's Collegiate Dictionary* (11th ed). "Poisoning" has also been defined as "[t]he administering of poison."

Focusing on the use of the word poison as a verb is in accord with the general proposition that for purposes of determining venue, the focus is on the "*act* that constitutes the felony." *Houthoofd*, 487 Mich at 585. In this case, the only criminal act put forth by the prosecution was defendant's alleged *delivery* of the controlled substance. As previously discussed, defendant's alleged criminal act was complete once the delivery occurred, and that delivery was completed entirely within Wayne County. Defendant has not been charged with any crime related to *poisoning* anyone. For example, he is not charged with first-degree murder by poisoning, see

-7-

MCL 750.316(1)(a),[5] or mingling a poison or harmful substance with food, drink, nonprescription medicine, or a pharmaceutical product, see MCL 750.436(1)(a).[6] Moreover, for purposes of establishing venue, the lesson from *Southwick* is that the mortal wound, injury, or poison must be inflicted on or administered to the victim *directly* in order for venue to be proper under MCL 762.5 when the death subsequently occurred in a different county. It is not enough to depend on a drug supply chain to link a defendant's act in one county to the death in another county of victim who had no contact with the defendant in order to rely on MCL 762.5 for establishing venue. In this case, there is no support for the contention that defendant administered anything *to* Nicholas.

In sum, without any evidence that defendant either administered a poison or inflicted a mortal wound or other violence or injury on Nicholas, MCL 762.5 is inapplicable to this case and does not provide a basis for laying venue in Monroe County. Therefore, the trial court erred by ruling that venue was proper in Monroe County and denying defendant's motion to dismiss.

Reversed and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Stephen L. Borrello
/s/ Michael J. Talbot
/s/ Michael J. Riordan

---

[5] MCL 750.316(1)(a) provides that a person who commits "[m]urder by means of poison, lying in wait, or any other willful, deliberate, and premediated killing" is guilty of first-degree murder.

[6] MCL 750.436(1)(a) provides that a person shall not

> [w]illfully mingle a poison or harmful substance with a food, drink, nonprescription medicine, or pharmaceutical product, or willfully place a poison or harmful substance in a spring, well, reservoir, or public water supply, knowing or having reason to know that the food, drink, nonprescription medicine, pharmaceutical product, or water may be ingested or used by a person to his or her injury.