*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
August 6, 2019

Plaintiff-Appellee,

v

No. 341973
Wayne Circuit Court
LC No. 17-000718-02-FC

KYRELL RAYMOND ALONZO,

Defendant-Appellant.

Before: GADOLA, P.J., and BOONSTRA and SWARTZLE, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial convictions of second-degree murder, MCL 750.317, and possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b. Defendant was sentenced as a second habitual offender, MCL 769.10, to 38 to 60 years' imprisonment for second-degree murder, and two years' imprisonment for felony-firearm. We affirm.

This case arises from the fatal shooting of Javon Perry at a gas station on Gratiot Avenue in Detroit, Michigan. The incident was recorded by a camera at the gas station and by other cameras at nearby businesses. In the early morning hours of January 5, 2017, defendant and several companions, including Derrick Quintin Everson, Jr., arrived at the gas station. The video from the gas station shows that the group entered the gas station store and first attempted to shoplift, then purchased some items. While they were inside the store, Javon Perry arrived at the gas station and entered the store. Video shows Perry paying for gas, then waiting inside the store and watching through the window until defendant and his companions begin to get inside a gold Buick parked outside. Perry then walked to his own car and began pumping gas.

According to defendant, Everson asked another member of the group "let me see the strap, I'm 'bout to go see what's up with him." Defendant testified that this meant that Everson was asking another member of the group for a gun, and was planning to confront Perry. The video recording shows that Everson then walked over to Perry, and Perry backed away to the other side of his car, with his hands up. Then defendant approached Perry, and Perry continued to back away toward the street. The video depicts Everson removing a gun from his pocket, and

-1-

loading it, while defendant began his attack on Perry, punching and kicking him and throwing him to the ground multiple times. Everson at one point joined defendant in kicking Perry.

Perry attempted to flee, running across the street. Defendant later told police that at this point, Everson fired a gunshot in the air; a witness also testified at trial that at this point she heard a gunshot. Defendant chased Perry across the street, throwing Perry to the ground repeatedly. Defendant then turned his back to Perry and began to walk away, while Everson moved close to Perry with the gun and shot Perry six times at close range. The video shows that defendant, though still quite close to the men, did not turn around or otherwise react to the gunshots fired immediately behind him. When Everson finished shooting, he and defendant ran back across the street to the gas station, and left in the same vehicle they arrived in. Perry died shortly thereafter from the bullet wounds, several of which were to his face.

Defendant was charged with first-degree premeditated murder and felony-firearm.[1] Defendant's first trial resulted in a mistrial, and defendant was thereafter retried. The jury found him guilty of the lesser included offense of second-degree murder, as well as felony-firearm. Defendant now appeals.

## I. SUFFICIENCY OF THE EVIDENCE

Defendant first contends that the evidence was insufficient to convict him of second-degree murder and felony-firearm. We disagree.

When examining whether a conviction is supported by sufficient evidence, we review the evidence in the light most favorable to the prosecution and consider whether there was sufficient evidence to justify a rational trier of fact in finding guilt beyond a reasonable doubt. *People v Oros*, 502 Mich 229, 239; 917 NW2d 559 (2018). The elements of a crime may be satisfactorily proven by circumstantial evidence and the reasonable inferences arising from that evidence. *Id*. The trier of fact determines what inferences may be fairly drawn from the evidence and the weight to be accorded those inferences. *People v Hardiman*, 466 Mich 417, 428; 646 NW2d 158 (2002). We therefore draw all reasonable inferences and make all credibility choices in support of the jury verdict in reviewing the sufficiency of the evidence. See *Oros*, 502 Mich at 239.

As an initial matter in this case, defendant suggests on appeal that the evidence was insufficient to identify him as the perpetrator of the crimes. Identity is an element of every offense, and the prosecution is therefore obligated to prove the identity of the defendant as the perpetrator as an element of the offense. See *People v Yost*, 278 Mich App 341, 356; 749 NW2d 753 (2008). A defendant's identity may be established by circumstantial evidence and the reasonable inferences arising from circumstantial evidence. *People v Johnson*, 146 Mich App 429, 434; 381 NW2d 740 (1986). Here, however, defendant identified himself to police as one of the perpetrators in the video recording of the murder, and thus there was sufficient evidence to identify defendant as a perpetrator of the crimes.

---

[1] Everson pleaded guilty to second-degree murder and felony-firearm.

Defendant argues, however, that although he admitted his role in the assault on Perry, he was not proven to be the perpetrator of Perry's murder because the video clearly shows that Everson alone shot Perry, and the medical examiner testified that Perry died from multiple gunshot wounds, not as a result of defendant's assault. We disagree.

The elements of second-degree murder are (1) a death, (2) caused by the defendant's act, (3) with malice, and (4) without justification or excuse. *People v Henderson*, 306 Mich App 1, 9; 854 NW2d 234 (2014). Malice can be established by demonstrating either the intent to kill, the intent to cause great bodily harm, or the intent to act with wanton and willful disregard of the likelihood that the natural result of the act is death or great bodily harm. *Id*. at 9-10. Willful and wanton disregard requires general intent only, meaning that the prosecution is not required to prove that the defendant intended the harmful result. *People v Goecke*, 457 Mich 442, 466; 579 NW2d 868 (1998). Because of the difficulty of proving an actor's intent, only minimal circumstantial evidence is required to establish that a defendant acted with the requisite intent. *People v Stevens*, 306 Mich App 620, 629; 858 NW2d 98 (2014). A defendant's intent to kill or cause great bodily harm may be established by inference from the facts in evidence. See *Id*.

In this case, defendant does not dispute that a death occurred and that he acted without justification or excuse, and we conclude that the record supports the jury's findings that these elements were proven beyond a reasonable doubt. Defendant testified that he did not know Perry, had no dispute with Perry, and attacked him for no reason whatsoever. Defendant does dispute, however, that the record demonstrates that he acted with malice. We conclude, however, that this factor is also supported by the evidence. The video footage depicts a brutal and unprovoked physical attack of Perry by defendant and Everson. When Perry attempted to flee, defendant pursued Perry across the street and continued to assault him, repeatedly knocking him to the ground. Although defendant testified that he did not intend to kill Perry, malice was established because defendant purposefully acted to cause great bodily harm, and also wantonly and willfully disregarded that the natural tendency of his behavior would cause death or great bodily harm. *People v Roper*, 286 Mich App 77, 84; 777 NW2d 483 (2009). Thus, the first, third, and fourth elements of second-degree murder are met. *Id*.

Defendant contends, however, that the second element was not established because Perry's death was not caused by defendant's assault on Perry, but instead was caused solely by Everson's act of shooting Perry. We disagree. The video recording of the murder shows defendant and Everson acting in concert to carry out a joint attack upon Perry. Defendant testified that before he began the assault on Perry, he heard Everson ask for a gun from another person in their group, and Everson stated that he was going to use the gun to assault Perry. The video recording shows Everson confronting Perry by the gas pump. Defendant then joins Everson at the gas pump and begins the attack on Perry, brutally assaulting him and preventing him from fleeing from Everson, who is following closely in defendant's wake, loading the gun. Defendant later told police that he then heard Everson fire a shot from the gun. Defendant continues his assault and succeeds in incapacitating Perry and preventing his escape, then Everson moves in and shoots Perry six times. Defendant, who has turned away and is walking, but who is still quite close to Perry when the shots are fired, shows no surprise at the gunfire; he does not turn back or appear to react to six gunshots fired immediately behind him. When Everson is done shooting, the two men run away together, and get in a car together.

MCL 767.39 provides that "[e]very person concerned in the commission of an offense, whether he directly commits the act constituting the offense or procures, counsels, aids, or abets in its commission may hereafter be prosecuted, indicted, tried and on conviction shall be punished as if he had directly committed such offense." Thus, under the aiding and abetting statute, a person who aids and abets in the commission of an offense may be tried and convicted as if he directly committed the offense. See *People v Moore*, 470 Mich 56, 63; 679 NW2d 41 (2004). A defendant aids and abets when:

> (1) the crime charged was committed by the defendant or some other person; (2) the defendant performed acts or gave encouragement that assisted the commission of the crime; and (3) the defendant intended the commission of the crime or had knowledge that the principal intended its commission at the time that [the defendant] gave aid and encouragement. [*People v Bennett*, 290 Mich App 465, 472; 802 NW2d 627 (2010) (quotation marks and citation omitted).]

Aiding and abetting includes all forms of assistance rendered to the perpetrator of a crime and includes all words or deeds that might support, encourage, or incite the commission of a crime. *People v Carines*, 460 Mich 750, 757; 597 NW2d 130 (1999).

In this case, the evidence was sufficient to convict defendant of second-degree murder under a theory of aiding and abetting. Perry died from the gunshot wounds inflicted by Everson, and the evidence overwhelmingly establishes that defendant performed acts that assisted, and in fact enabled, Everson shooting Perry. The video recording clearly shows a joint attack. Indeed, a review of the video recording of the murder suggests that Everson may not have been able to incapacitate Perry or prevent him from escaping without the aid of defendant, who is much larger than either Perry or Everson. Knowing that Everson had a gun and planned to use it to attack Perry, defendant began the assault on Perry to incapacitate him and prevent his escape from Everson. Even after defendant heard Everson fire the gun, he continued his assault on Perry until he succeeded in beating Perry to the ground, then he turned away, permitting Everson to step forward with the gun and shoot Perry six times at close range. Thus, the evidence was sufficient to convict defendant of second-degree murder under a theory of aiding and abetting.

Additionally, there was sufficient evidence in the record for a reasonable jury to convict defendant of felony-firearm, MCL 750.227b, under a theory of aiding and abetting. A defendant is guilty of felony-firearm if he or she possessed a firearm during the commission of, or the attempt to commit, a felony. *People v Bass*, 317 Mich App 241, 268-269; 893 NW2d 140 (2016). The test for aiding and abetting felony-firearm is whether the defendant "procures, counsels, aids, or abets in [another carrying or having possession of a firearm during the commission or attempted commission of a felony]." *Moore*, 470 Mich at 70, citing MCL 767.39. To prove aiding and abetting of felony-firearm, the prosecution must establish that the felony-firearm statute was violated by someone, that the defendant acted or encouraged, and thereby assisted in the commission of the felony-firearm violation, and that the defendant intended the felony-firearm violation or knew that that principal intended to commit the felony-firearm violation at the time the defendant gave aid or encouragement. *Id*. at 70-71.

Here, viewed in the light most favorable to the prosecution, the same evidence that supports defendant's conviction of second-degree murder under an aiding and abetting theory

also supports his felony-firearm conviction. Everson used a gun to murder Perry, thereby violating the felony-firearm statute. Defendant helped him; defendant knew Everson had the gun and was planning to attack Perry, so he beat Perry to the ground, enabling Everson to kill him with the gun. The evidence was sufficient for the jury to convict defendant of felony-firearm under a theory of aiding and abetting.

## II. ADMISSIBILITY OF PHOTOGRAPHIC EVIDENCE

Defendant also contends that the trial court denied him a fair trial by admitting photographs of Perry that were prejudicial and irrelevant. Again, we disagree.

Photographic evidence is generally admissible if it is relevant under MRE 401, and not unduly prejudicial under MRE 403. *People v Gayheart*, 285 Mich App 202, 227; 776 NW2d 330 (2009). Photographic evidence warrants exclusion only when the probative value of the evidence is outweighed by the danger of unfair prejudice. *People v Brown*, 326 Mich App 185, 192; 926 NW2d 879 (2018). Photographs that are for the sole purpose of arousing the sympathies or prejudices of the jury should not be admitted. *Brown*, 326 Mich App at 193. "However, if a photograph is otherwise admissible for a proper purpose, it is not rendered inadmissible merely because it brings vividly to the jurors the details of a gruesome or shocking accident or crime." *Id*. (quotation marks and citation omitted). We will not disturb a trial court's decision to admit or exclude evidence absent an abuse of discretion. *People v Denson*, 500 Mich 385, 396; 902 NW2d 306 (2017). An abuse of discretion occurs when the trial court's decision falls outside the range of principled outcomes. *People v McBurrows*, 322 Mich App 404, 411; 913 NW2d 342 (2017).

In this case, defendant objected to the admission of two photographs depicting Perry before the attack. One is a photograph of Perry in a car, and the other is a photograph of Perry in work clothes in a factory setting. Perry's cousin, Tanisha Holloway, testified that the pictures portrayed Perry as he generally appeared in life. Defendant also objected to the admission of photographs taken during the autopsy, depicting the injuries and bullet holes to Perry's face, head, shoulders, back, hands, and knee, and the bullet fragments that were removed from his body. Defendant argues that the photographs lacked probative value because they are duplicative of the video shown to the jury.

Defendant was charged with first-degree murder, which required the prosecution to establish beyond a reasonable doubt a "[m]urder perpetrated by means of poison, lying in wait, or any other willful, deliberate, and premeditated killing." MCL 750.316(1)(a). This Court has observed that injuries suffered by a victim may be indicative of a defendant's intent. See *Stevens*, 320 Mich App at 629. Here, the trial court admitted the photographs as relevant to the elements of the crime, including absence of self-defense, malice, premeditation, deliberation, and intent to kill. Further, the record indicates that the trial court specifically considered each photograph and what it depicted before permitting its admission, and allowed the admission of only a limited number of photographs. Because the photographs showing the harm inflicted were probative of whether defendant intended to kill Perry, they were relevant.

It is true that the photographs depicting the damage done to Perry's body by defendant's and Everson's attack are unsettling, contrasted with the "before" photographs of Perry showing

an attractive young man with a job and nice car. Although photographs should not be admitted merely to shock or inflame the jury,[2] there is also no basis to sugar-coat a crime for the jury by excluding photographs that accurately depict the crime and the propensities of the person who committed the crime. See *Brown*, 326 Mich App at 193. Here, the video shows defendant's acts and the photographs depict the result of his acts, not otherwise apparent in the video. We conclude that the trial court did not abuse its discretion in admitting the photographs into evidence.

Affirmed.

/s/ Michael F. Gadola
/s/ Mark T. Boonstra
/s/ Brock A. Swartzle

---

[2] We observe that the jury did not convict defendant of first-degree murder, the most serious charge, suggesting that the jury did not make its decision on the basis of an unfair emotional response. See *People v Head*, 323 Mich App 526, 542; 917 NW2d 752 (2018).