*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

TIFFANY LYN-DEE DUMBACK,

        Defendant-Appellant.

FOR PUBLICATION
December 17, 2019
9:05 a.m.

No. 345467
Chippewa Circuit Court
LC No. 17-003168-FH

Before: MURRAY, C.J., and SAWYER and GLEICHER, JJ.

PER CURIAM.

The legislative sentencing guidelines counsel the assessment of 100 points for Offense Variable (OV) 3 when "[a] victim was killed" as a result of "the commission of" the sentencing offense, but only if "homicide is not the sentencing offense." MCL 777.33(1)(a), (2)(b). For purposes of scoring the guidelines, "homicide" includes "any crime in which the death of a human being is an element." MCL 777.1(c). Unpublished cases from this Court indicate that "the death of a human being" is not an element of failure to stop at the scene of an accident when at fault and resulting in death, MCL 257.617(3); rather, this Court has described MCL 257.617(3) as a "penalty provision." Those cases were wrongly decided and we now clarify that a violation of MCL 257.617(3) is a "homicide" for purposes of scoring OV 3 under MCL 777.33. Therefore, a 100-point score for OV 3 is not permitted.

Tiffany Dumback pleaded guilty to failure to stop at the scene of an accident when at fault and resulting in death and the trial court assessed 100 points for OV 3 at sentencing. As this score was not permitted, we vacate Dumback's sentences and remand for resentencing under the corrected guidelines. We otherwise affirm Dumback's convictions.

## I. BACKGROUND

At approximately 10:30 p.m. on December 3, 2016, Chippewa County Sheriff's deputies responded to a single vehicle rollover accident. The only person inside the pickup truck, Benjamin Hilts, was in the passenger seat; he had been killed in the accident. The deputies found open and unopened beer containers in the truck cabin and noted that Hilts smelled of alcohol. The deputies further noted that the driver's seat was pulled too close for Hilts to have

-1-

been driving. A search of the vehicle uncovered a cellular telephone and purse belonging to Hilts's girlfriend, Tiffany Dumback.

Dumback was driving Hilts's truck when the accident occurred. She was travelling 82 mph in a 55-mph zone. Dumback asserted that she and Hilts were arguing at the time of the accident and that the truck had many structural and mechanical issues that made it hard to control. After the accident, Dumback "did not know what to do," so she exited the vehicle and ran to her parents' house, which was approximately a mile from the accident scene. Dumback claimed that she did not report the accident to the authorities when she reached her destination because her sister was listening to a police scanner and learned that assistance had already been summoned. There is no record indication that Dumback was intoxicated during these events.

Sheriff's deputies arrested Dumback in January 2017. The prosecutor charged her with manslaughter with a motor vehicle, failure to report an accident, reckless driving causing death, failure to stop at the scene of an accident when at fault resulting in death, and a moving violation causing death. Dumback ultimately pleaded guilty to failure to stop at the scene of an accident when at fault and resulting in death, MCL 257.617(3), and careless or negligent driving, MCL 257.626b.

Before sentencing, the Department of Corrections (DOC) created a presentence investigation report (PSIR) and sentencing information report (SIR). In scoring Dumback's prior record variables (PRVs), the DOC assessed two points for PRV 5, placing Dumback in PRV Level B. The DOC scored several offense variables (OVs). At issue in this appeal is the DOC's assessment of 100 points for OV 3. OV 3 is governed by MCL 777.33, which provides, in relevant part:

(1) [OV] 3 is physical injury to a victim. Score [OV] 3 by determining which of the following apply and by assigning the number of points attributable to the one that has the highest number of points:

(a) A victim was killed……………………………..100 points.

(b) A victim was killed……………………………..50 points.

* * *

(f) No physical injury occurred to a victim……………0 points.

(2) All of the following apply to scoring [OV] 3:

* * *

(b) Score 100 points if death results from the commission of a crime and homicide is not the sentencing offense. . . .

MCL 777.33(2)(c), which is not applicable in this case, directs that 50 points should be scored if the victim is killed, the "offense involve[d] the operation of a" motor vehicle, and the offender

was under the influence of drugs or alcohol. The assessment of 100 points for OV 3 led to a total OV score of 120 and placement in OV Level VI.[1]

Dumback contended at sentencing that zero points should have been assessed for OV 3 because OV 3 precludes scoring 100 points if the death of a human being is an element of the offense. She asserted that the death of a human being is an element of failure to stop at the scene of an accident when at fault and resulting in death. Relying on *People v Conklin*, unpublished per curiam opinion of the Court of Appeals, issued October 28, 2004 (Docket No. 248542), unpub op at 2, the trial court determined that the death of a human being is not an element of the offense because "[a] person can commit an offense of failing to stop at a scene of an accident without causing the death of another person." Accordingly, the court affirmed the 100-point score for OV 3.

The recommended minimum sentencing guidelines range for a Class C offense against a person, for a defendant scored in grid B-VI is 36 to 71 months. The trial court sentenced Dumback within that range to a term of 57 to 180 months' imprisonment. Without the 100-point score for OV 3, Dumback would have been scored in grid B-II, with a recommended minimum guidelines range of only 5 to 17 months.

Dumback subsequently filed a delayed application for leave to appeal to this Court. We granted the application limited to the following issues:

(1) Whether the death of a human being is an element of the offense defined in MCL 257.617(3) for purposes of Offense Variable (OV) 3, MCL 777.33, and if so

(2) Whether Model Criminal Jury Instruction 15.14a conflicts with this Court's decision regarding OV 3 scoring in *People v Lacosse*, unpublished opinion per curiam of the Court of Appeals, issued September 16, 2014 (Docket No. 310987), rev'd in part on other grounds 499 Mich 873 (2016). [*People v Dumback*, unpublished order of the Court of Appeals, entered October 26, 2018 (Docket No. 345467).]

II. ANALYSIS

We review de novo the trial court's interpretation of the statutory sentencing guidelines. *People v Babcock*, 469 Mich 247, 253; 666 NW2d 231 (2003). "[O]ur goal in interpreting a statute is to ascertain and give effect to the intent of the Legislature. The touchstone of legislative intent is the statute's language. If the statute's language is clear and unambiguous, we assume that the Legislature intended its plain meaning and we enforce the statute as written." *People v Hardy*, 494 Mich 430, 439; 835 NW2d 340 (2013) (cleaned up).[2]

---

[1] A typographical error on the SIR lists Dumback's OV Level as IV.

[2] This opinion uses the parenthetical (cleaned up) to improve readability without altering the substance of the quotation. The parenthetical indicates that nonsubstantive clutter such as

As noted, MCL 777.33(2)(b) precludes assessing 100 points for OV 3 if homicide is the sentencing offense. A "homicide" for purposes of the sentencing guidelines is "any crime in which the death of a human being is an element of that crime." MCL 777.1(c).

Relevant to this appeal, Dumback pleaded guilty to a violation of MCL 257.617(3). MCL 257.617 provides in full:

(1) The driver of a vehicle who knows or who has reason to believe that he or she has been involved in an accident upon public or private property that is open to travel by the public shall immediately stop his or her vehicle at the scene of the accident and shall remain there until the requirements of [MCL 257.619] are fulfilled or immediately report the accident to the nearest or most convenient police agency or officer to fulfill the requirements of [MCL 257.619(a) and (b)] if there is a reasonable and honest belief that remaining at the scene will result in further harm. The stop shall be made without obstructing traffic more than is necessary.

(2) Except as provided in subsection (3), if the individual violates subsection (1) and the accident results in serious impairment of a body function or death, the individual is guilty of a felony punishable by imprisonment for not more than 5 years or by a fine of not more than $5,000.00, or both.

(3) If the individual violates subsection (1) following an accident caused by that individual and the accident results in the death of another individual, the individual is guilty of a felony punishable by imprisonment for not more than 15 years or a fine of not more than $10,000.00, or both.

MCL 257.617(1) criminalizes leaving the scene after being involved in an accident. MCL 257.617(2) more specifically criminalizes leaving the scene after being involved in an accident that resulted "in serious impairment of a body function or death," and MCL 257.617(3) criminalizes leaving the scene of an accident when at fault and resulting "in the death of another individual."

A

In two unpublished opinions, this Court has held that the conduct described in MCL 257.617(3) does not amount to a "homicide" under the sentencing guidelines and therefore that a convicted defendant can be assessed 100 points for OV 3. In *Conklin*, unpub op at 2, a panel of this Court held:

Homicide, i.e., the death of a human being, MCL 777.1(c), is not an element of the failing to stop offense. A person can commit the offense of failing to stop at

_____

brackets, alterations, internal quotation marks, and unimportant citations have been omitted from the quotation. See Metzler, *Cleaning Up Quotations*, 18 J App Pract & Process 143 (2017).

the scene of an accident without causing the death of another person. MCL 257.617(3) is a penalty provision, and does not make homicide an element of the failing to stop offense.[3]

In *Lacosse*, unpub op at 4, this Court described the defendant's position that he could not be assessed any points for OV 3 as follows:

> [D]efendant contends that the sentencing offenses—the failure to stop and report the accident—did not cause the victims' death and injury. Rather, the accident itself caused the death and injury. As defendant was not convicted of a crime related to the actual accident, he contends that he could not be assessed points for [OV 3].

The *Lacosse* panel ultimately held:

> However, defendant's interpretation of the statute under which he was convicted is not accurate. The judgment of sentence does not indicate under which subsection of MCL 257.617 defendant was convicted. MCL 257.617(3) provides the punishment for a failure to stop or report an accident "following an accident caused by that individual." At the plea hearing, defendant admitted that his car struck something on the night in question. Accordingly, contrary to defendant's assertion, the underlying accident caused by defendant is part of the sentencing offense.
>
> Defendant's score of 100 points for OV 3 fits squarely within the parameters of the statute. A victim was killed as required by MCL 777.33(1)(a). One hundred points were permitted because homicide was not the sentencing offense. MCL 777.33(2)(b). And the court was required to select the relevant option with the highest number of points, precluding consideration of a lower score based on drunken driving. MCL 777.33(1); see also MCL 777.33(2)(c). . . . [*Id*.]

As the defendant in *Lacosse* did not argue that a resultant death was an element of the offense proscribed in MCL 257.617(3), the panel did not address this question and instead resolved whether 100 points could be assessed consistent with *Conklin*.

B

We now conclude that *Conklin* was wrongly decided, and that the result in *Lacosse* cannot stand. We first note that the reasoning employed by the *Conklin* panel was recently overruled by the Michigan Supreme Court in *People v McBurrows*, 504 Mich 308, 318-320; 934 NW2d 748 (2019). The Court of Appeals in *People v McBurrows*, 322 Mich App 404, 413; 913

---

[3] The Legislature amended MCL 257.617 after the release of *Conklin* but the amendments had no impact on this Court's reasoning.

NW2d 342 (2017) (emphases omitted), held that the offense of delivering a controlled substance causing death, MCL 750.317a, was "properly understood as providing a penalty enhancement when a defendant's criminal act—the delivery of a controlled substance in violation of MCL 333.7401—has the result or effect of causing a death to any other individual." The Supreme Court found this characterization erroneous. *McBurrows*, 504 Mich at 318.

> The Court of Appeals characterized MCL 750.317a as a "penalty enhancement" in reliance on this Court's statement in [*People v*] *Plunkett*, 485 Mich [50, 60; 780 NW2d 280 (2010)], that MCL 750.317a "provides an additional punishment for persons who 'deliver[]' a controlled substance in violation of MCL 333.7401 when that substance is subsequently consumed by 'any. . . person' and it causes that person's death." The Court of Appeals read too much into our characterization of MCL 750.317a as providing "an additional punishment." It is only an "additional punishment" because MCL 333.7401 itself criminalizes the delivery of a controlled substance, without regard to the consequences, and punishes it to a lesser degree than MCL 750.317a. Nothing requires the Legislature to criminalize delivery of a controlled substance at all; it could content itself with only punishing a delivery if the consumption of the delivered substance causes a death. In such a scenario, no crime at all would have occurred—and criminal liability would not have attached—until the death occurred, which illustrates the necessity of the death as an element of the crime itself, rather than a mere basis for a penalty enhancement.

> To express this concept another way, MCL 750.317a establishes a crime that is distinct from the crime established in MCL 333.7401, with its own elements. The elements of a prosecution under MCL 750.317a are: (1) delivery to another person, (2) of a schedule 1 or 2 controlled substance (excluding marijuana), (3) with intent to deliver a controlled substance as proscribed by MCL 333.7401, (4) consumption of the controlled substance by a person, and (5) death that results from the consumption of the controlled substance. Although MCL 750.317a is predicated on a violation of MCL 333.7401, it adds elements that make it a distinct offense. While, as noted, it would be entirely possible for the Legislature not to criminalize delivery of a controlled substance at all, the fact that it has—and has provided a different punishment when the consumption of the delivered substance causes a death—illustrates that what the Court of Appeals characterized as a "penalty enhancement" is in fact a distinct crime. An "element" of a crime is any "fact[] that increase[s] the prescribed range of penalties to which a criminal defendant is exposed." *Apprendi v New Jersey*, 530 US 466, 490; 120 S Ct 2348; 147 L Ed 2d 435 (2000) (quotation marks and citation omitted). Because death, if proved, "increase[s] the prescribed range of penalties," it is an "element" as defined in *Apprendi* and not a mere "sentencing consideration" or "penalty enhancement," meaning it "must be submitted to a jury, and proved beyond a reasonable doubt." *Id.* [*McBurrows*, 504 Mich 318-320.]

While *McBurrows* involved the interaction of two separate statutes, its reasoning applies to the interaction of the subsections in the current matter. MCL 257.617(1) and MCL 257.617(3)

establish crimes distinct from each other, each with its own elements, and subsection (3) is not a mere "penalty enhancement" or "penalty provision." Applying *McBurrows*' reasoning, MCL 257.617(3) "is only an 'additional punishment' because" MCL 257.617(1) "itself criminializes" leaving the scene of an accident "without regard to the consequences, and punishes it to a lesser degree than" MCL 257.617(3). *McBurrows*, 504 Mich at 319.

To support conviction under subsection (1), the prosecution must establish that the driver of a vehicle was involved in an accident, knew or had reason to know that the accident occurred, and did not stop or report. To support conviction under subsection (3), the prosecution must again establish that the driver of a vehicle was involved in an accident, knew or had reason to know that the accident occurred, and did not stop or report, but must also prove that the driver caused the accident and that another person died as a result of the accident. These additional requirements are elements of the offense because they " 'increase[] the prescribed range of penalties to which a criminal defendant is exposed.' " *Id*. at 320, quoting *Apprendi*, 530 US at 490. These additional requirements must be presented to and found by the jury. Therefore, they are offense elements.

C

Moreover, treating the "results in the death of another individual" piece of failure to stop at the scene of an accident when at fault and resulting in death offense as a penalty provision rather than an element is contradictory to this Court's treatment of similar offenses. A string of decisions from this Court, both published and unpublished, have determined that similar vehicular crimes involving death are homicides for purposes of OV 3, precluding a score of 100 points. In *People v Brown*, 265 Mich App 60, 61-62; 692 NW2d 717 (2005), rev'd on other grounds 474 Mich 876; 704 NW2d 462 (2005), for example, the defendant pleaded guilty to driving with a suspended license causing death, MCL 257.904(4). The question in *Brown*, 265 Mich App at 64-65, was whether the court could assess 25 points under MCL 777.33(1)(c) (reflecting a "[l]ife threatening or permanent injury) or was required to assess zero. This Court stated without analysis that driving with a suspended license causing death was a "homicide" offense and therefore 100 points was not permissible. *Id*. at 65.

The statutory framework of MCL 257.904, proscribing driving with a suspended license, is similar to MCL 257.617. At the time the defendant in that case committed his offense, MCL 257.904 provided, in relevant part:

> (1) A person whose operator's or chauffeur's license or registration certificate has been suspended or revoked and who has been notified as provided in [MCL 257.212] of that suspension or revocation, whose application for license has been denied, or who has never applied for a license, shall not operate a motor vehicle upon a highway or other place open to the general public or generally accessible to motor vehicles, including an area designated for the parking of motor vehicles, within this state.

* * *

-7-

(3) Except as otherwise provided in this section, a person who violates subsection (1) . . . is guilty of a misdemeanor punishable as follows:

\* \* \*

(4) A person who operates a motor vehicle in violation of subsection (1) and who, by operation of that motor vehicle, causes the death of another person is guilty of a felony punishable by imprisonment for not more than 15 years or a fine of not less than $2,500.00 or more than $10,000.00, or both. . . . [MCL 257.904, as amended by 200 PA 77, effective October 1, 2000.]

Subsequent amendments to MCL 257.904 have not altered the substance of these provisions. As with MCL 257.617, the first subsection of MCL 257.904 defines an operating offense in which no one is injured. Later subsections define the same offense, but with added elements of the harm caused to a victim. The purpose of MCL 257.904(4) was not to create a "punishment provision" for an offense in which operating with a suspended license "causes the death of another person"; rather, the statute created a new offense, one element of which was a resultant death.

In *People v Charles (On Reconsideration)*, unpublished per curiam opinion of the Court of Appeals, issued February 2, 2006 (Docket No. 246034), slip op at 1, the defendant was convicted of operating a motor vehicle while under the influence of intoxicating liquor causing death, MCL 257.625(4), as well as driving with a suspended license causing death. The trial court scored 25 points for OV 3, reflecting that the defendant caused the victim to suffer a "life threatening injury." *Charles*, unpub op at 7. The court noted that the injury ultimately resulted in death, but explained that 100 points could not be assessed for OV 3 as "homicide was the sentencing offense." *Id*.

MCL 257.625 is structured similar to both MCL 257.617 and MCL 257.904. At the time of the defendant's offense, MCL 257.625 provided, in relevant part:

(1) A person, whether licensed or not, shall not operate a vehicle upon a highway or other place open to the general public or generally accessible to motor vehicles, including an area designated for the parking of vehicles, within this state if either of the following applies:

(a) The person is under the influence of intoxicating liquor, a controlled substance, or a combination of intoxicating liquor and a controlled substance.

(b) The person has an alcohol content of 0.10 grams or more per 100 milliliters of blood, per 210 liters of breath, or per 67 milliliters of urine.

\* \* \*

(3) A person, whether licensed or not, shall not operate a vehicle upon a highway or other place open to the general public or generally accessible to motor vehicles, including an area designated for the parking of vehicles, within this state when, due to the consumption of intoxicating liquor, a controlled substance, or a

combination of intoxicating liquor and a controlled substance, the person's ability to operate the vehicle is visibly impaired. If a person is charged with violating subsection (1), a finding of guilty under this subsection may be rendered.

(4) A person, whether licensed or not, who operates a motor vehicle in violation of subsection (1) or (3) and by the operation of that motor vehicle causes the death of another person is guilty of a felony punishable by imprisonment for not more than 15 years or a fine of not less than $2,500.00 or more than $10,000.00, or both. . . . [MCL 257.625, as amended by 1999 PA 73, effective October 1, 1999.]

The statute has been amended many times to lower the legal limit of intoxication and to reorganize certain provisions, but the structure of the offense elements have remained substantively the same. Despite that MCL 257.625(4) provides a different penalty for operating under the influence causing death than an offense without injury, this Court did not characterize MCL 257.625(4) as a "penalty provision."

And in *People v Titus*, unpublished per curiam opinion of the Court of Appeals, issued February 15, 2018 (Docket Nos. 336352; 337177), slip op at 1, defendant Titus pleaded guilty to reckless driving causing death, MCL 257.626(4). "The trial court cited the death of a victim . . . as [an] aggravating circumstance[]" in imposing an upwardly departing sentence. *Titus*, unpub op at 6. This Court noted that "the death of a victim is not itself an aggravating circumstance. Indeed, it is an element of the offense of reckless driving causing death." *Id*. And again, the statute at issue provided a general offense of "reckless driving" punishable by different degrees depending on the addition of certain elements. The addition of elements in these provisions created additional, separate offenses.

D

We find further support for holding that "results in the death of another individual" is an element of the subject offense in *People v Feezel*, 486 Mich 184, 193-194; 783 NW2d 67 (2010). MCL 257.617(3) also requires the prosecution to prove causation, an element not included in subsections (1) or (2). In *Feezel*, 486 Mich at 193, the Supreme Court noted that "the plain language of MCL 257.617(3) contains an element of causation." The Court continued, "Specifically, the statute imposes criminal liability if an individual fails to stop 'following an accident caused by that individual and the accident results in the death of another.'" *Feezel*, 486 Mich at 194 (emphasis in *Feezel*). As "the statute specifically requires the prosecution to establish that the accident was 'caused' by the accused," the Court held, causation was an element of the offense. *Id*.

Just as causation is an element of a violation of MCL 257.617(3), so too is "results in the death of another." The prosecution cannot establish that a defendant violated the statute without proving that a death resulted. If causation is more than a penalty provision, so too is a resultant death.

-9-

E

As we have determined that "results in the death of another" is an element of a violation of MCL 257.617(3) and that this Court's unpublished opinion in *Lacosse* cannot stand, we need not reach the second issue addressed by Dumback on the order of this Court. M Crim JI 15.14a directs trial courts to inform the jury that it must find beyond a reasonable doubt that the defendant both caused the accident and that the accident resulted in death. As now clarified, these instructions are in conformity with the law.

We affirm Dumback's conviction, but vacate her sentences and remand for resentencing consistent with this opinion. We do not retain jurisdiction.

/s/ Christopher M. Murray
/s/ David H. Sawyer
/s/ Elizabeth L. Gleicher