*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

KIMBERLY DAWN NIX,

Defendant-Appellant.

UNPUBLISHED
March 26, 2025
1:27 PM

No. 369766
Wayne Circuit Court
LC No. 23-001181-01-FH

Before: YATES, P.J., and LETICA and N. P. HOOD, JJ.

PER CURIAM.

Defendant appeals as of right her jury-trial convictions of assault with the intent to do great bodily harm less than murder (AWIGBH), MCL 750.84, and assault with a dangerous weapon (felonious assault), MCL 750.82. Defendant was sentenced to three years' probation with a term of six months in jail at the end of the probation that would be waived if defendant successfully completed probation. We affirm.

## I. FACTS

On July 24, 2022, defendant drove her car into the victim, inflicting serious injuries to the victim's left ankle and leg. Before the assault, the victim had driven her mother, defendant's then-wife, to defendant's home to collect some of her mother's belongings. Defendant and the mother had been married for about eight years.[1] The mother reported leaving the relationship three days earlier due to abuse.

A police escort was present while the mother removed her items. The mother could not find her purse, glasses, or identification, and inquired about them. Defendant said they were at the

---

[1] At trial, defendant disputed the legality of the marriage.

victim's grandmother's home behind the fence. The victim and her mother left defendant's home without the police escort to retrieve the missing items at the grandmother's home.

When the two arrived, the victim backed her vehicle into her grandmother's driveway.[2] The victim stepped out to collect her mother's items. At that point, defendant pulled up in the driveway, blocking their vehicle. The victim, who was licensed to have a gun, drew it and pointed it at defendant, who challenged her to use it. The victim backed away and holstered her gun. A heated argument ensued about defendant's and the mother's relationship as well as the necessity for the earlier police presence at defendant's home. Ultimately, defendant got back into her SUV. The victim followed defendant, slammed the SUV's door, and directed defendant to leave. The victim then turned around and walked toward the house. Defendant accelerated her car and hit the victim. The victim was knocked from the sidewalk to the porch, and her left ankle was severely injured. The victim's gun fell out of the holster. The mother ran over to the victim as defendant tried to reverse and drive away. The mother grabbed the victim's gun and fired five shots at defendant's fleeing vehicle.[3]

The victim called 911 and was transported to the hospital. The victim underwent several surgeries to repair her left ankle. This appeal followed.

## II. PHOTOGRAPHS OF THE VICTIM'S INJURIES

Defendant argues the trial court improperly admitted the photographs of the victim's injuries because they lacked probative value and were prejudicial. We disagree.

### A. STANDARD OF REVIEW

"A trial court's decision to admit evidence will not be disturbed absent an abuse of discretion." *People v Denson*, 500 Mich 385, 396; 902 NW2d 306 (2017). "An abuse of discretion occurs when the trial court chooses an outcome falling outside the range of principled outcomes." *People v McBurrows*, 322 Mich App 404, 411; 913 NW2d 342 (2017) (quotation marks and citation omitted). "[A]n abuse of discretion standard acknowledges that there will be circumstances in which there will be no single correct outcome; rather, there will be more than one reasonable and principled outcome." *People v Babcock*, 469 Mich 247, 269; 666 NW2d 231 (2003). "However, whether a rule or statute precludes admission of evidence is a preliminary question of law that this Court reviews de novo." *Denson*, 500 Mich at 396. "[I]t is necessarily an abuse of discretion to admit legally inadmissible evidence." *People v Lowrey*, 342 Mich App 99, 108; 993 NW2d 62 (2022).

### B. ANALYSIS

During trial, the victim testified that her left foot was "hanging off my body" after defendant's SUV hit her. She was hospitalized for a month and had nine surgeries to reconstruct her ankle. Initially, she had three plates and nine screws in her ankle. She could not even stand

---

[2] A neighbor provided video footage from his Ring camera of the incident.

[3] The police recovered four shell casings.

on her ankle for about four months. People's Exhibit 2, a photograph of the victim's injuries at the scene, depicted the victim's protruding bone, an abrasion, and her left ankle in an odd position. The victim further described her entire leg as being bruised.

When the prosecutor attempted to admit additional photographs of the victim's injuries, defendant objected on the ground that they were more prejudicial than probative. In defendant's view, the later photographs showed the victim's condition after medical intervention and served no purpose. She claimed that the same information could be conveyed without the photographs simply by asking the victim whether her injuries required further medical intervention. Finally, although defendant recognized that the victim's injuries were serious, she contended that they did not establish her intent.

The prosecutor disagreed, asserting that the extent of the injuries was relevant to establishing defendant's intent. And, while all the exhibits were "somewhat prejudicial," they were not unfairly prejudicial in comparison to their probative value.

Defendant responded that the victim's injuries could have occurred if she fell off the porch, landed badly, and broke her leg. Again, defendant maintained that the victim's need for medical treatment could be established without "graphic detail."

To resolve the parties' dispute, the trial court looked to the Model Criminal Jury Instructions for AWIGBH. In pertinent part, M Crim JI 17.7 provides that the prosecution must prove the following beyond a reasonable doubt to establish AWIGBH:

(2) First, that the defendant tried to physically injure another person.

(3) Second, that at the time of the assault, the defendant had the ability to cause an injury, or at least believed that [he / she] had the ability.

(4) Third, that the defendant intended to cause great bodily harm. Actual injury is not necessary, *but if there was an injury, you may consider it as evidence in deciding whether the defendant intended to cause great bodily harm.* Great bodily harm means any physical injury that could seriously harm the health or function of the body. [(Emphasis added.)]

Viewing the photographs, the trial court concluded that they pertained to the third element, that they were not more prejudicial than probative, and that they were admissible if authenticated.[4]

---

[4] The victim testified that she took all of the photographs while she was in the hospital. People's Exhibits 6 through 8 were taken the day after the assault. People's Exhibit 7 showed a close up of the staples with a rod going directly through the victim's left heel. People's Exhibit 8 depicted a doctor changing the victim's wound coverings, which occurred every three to four days, along with the rods and a pin. People's Exhibit 5, taken two days after the assault, showed the portion of the open ankle wound that required a skin graft, another area where stitches closed a wound, and a wound where a bone had previously protruded. People's Exhibit 4, taken about six days

"A trial court admits relevant evidence to provide the trier of fact with as much useful information as possible." *People v Cameron*, 291 Mich App 599, 612; 806 NW2d 371 (2011). "Photographic evidence is generally admissible as long as it is relevant, MRE 401, and not unduly prejudicial, MRE 403." *People v Gayheart*, 285 Mich App 202, 227; 776 NW2d 330 (2009).

Under MRE 401, evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence in determining the action." But, a "court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." MRE 403. "Exclusion is required under MRE 403 only when the danger of unfair prejudice substantially outweighs the probative value of the evidence." *People v Head*, 323 Mich App 526, 541; 917 NW2d 752 (2018). Thus, "photographs that are merely calculated to arouse the sympathies or prejudices of the jury should not be admitted." *People v Howard*, 226 Mich App 528, 549; 575 NW2d 16 (1997). "However, if a photograph is otherwise admissible for a proper purpose, it is not rendered inadmissible merely because it brings vividly to the jurors the details of a gruesome or shocking accident or crime." *Id*. at 549-550.

"The elements of AWIGBH are: (1) an attempt or threat with force or violence to do corporal harm to another (an assault), and (2) an intent to do great bodily harm less than murder." *People v Stevens*, 306 Mich App 620, 628; 858 NW2d 98 (2014) (quotation marks and citation omitted). "AWIGBH is a specific intent crime. The intent to do great bodily harm less than murder is an intent to do serious injury of an aggravated nature." *Id*. (quotation marks and citation omitted). "Intent to cause serious harm can be inferred from the defendant's actions[.]" *Id*. at 629. And, "[a]lthough actual injury to the victim is not an element of the crime, injuries suffered by the victim may also be indicative of a defendant's intent[.]" *Id*. (citations omitted). See also M Crim JI 17.7(4).

Defendant argues that the photographs lacked probative value. Specifically, defendant contends that her intent cannot be inferred from the extent of the victim's injuries. Defendant asserts that the victim's injuries would have been the same whether defendant intentionally drove her SUV into the victim (as testified to by the victim and her mother), or whether defendant accidentally drove into the victim (as defendant testified), especially when she was willing to stipulate that the victim was injured.

Defendant suggests that this argument was raised below. But, review of the record reveals that trial counsel asserted that the post-treatment hospital photographs "serve[d] no purpose in showing what happened prior to the actual injury occurring," and, later, said "that the victim's injury could have occurred "by falling off the porch and landing badly and breaking her leg." See

---

after the assault, showed the victim's major wound with a skin graft placed over it. The doctors were attempting to close up the wound area due to the tissue and muscle loss. People's Exhibit 4 also depicted the rod and pin, which held the victim's bone in place. People's Exhibits 4 and 6 showed the open injury, which was the most gruesome.

MRE 103(a)(1)[5]; *People v Asevedo*, 217 Mich App 393, 398; 551 NW2d 478 (1996) (objection to evidence on one ground is insufficient to preserve appellate attack on another ground). But, assuming that defendant's claim was preserved, we agree that the photographs, standing alone, do not demonstrate whether the victim sustained her injuries from an intentional assault or an accident. Cf. *People v Mills*, 450 Mich 61, 71-72; 537 NW2d 909 (1995), mod 450 Mich 1212 (1995) (where photographs of the burn victim's injuries were relevant to show that the defendant intentionally, rather than accidentally, used gasoline to burn her). Yet, defendant ignores that the credibility of all the witnesses was in dispute and that "[t]he jury was entitled to view the nature and extent of the injuries for themselves[.]" *Id*. at 72-74. Moreover, if the jury believed the victim's and mother's testimony that defendant intentionally drove into the victim, the injuries she suffered "may also be indicative of . . . defendant's intent[.]" *Stevens*, 306 Mich App at 329. (citations omitted). For these reasons, the photographs were probative.

Turning to the question of whether the probative value of the photographs was substantially outweighed by the prejudicial effect, defendant contends that "[a]dmission of photographs solely to arouse the sympathies or prejudices of the jury may be error requiring reversal," citing *People v Ho*, 231 Mich App 178, 187; 585 NW2d 357 (1998). As already discussed, "if photographs are otherwise admissible for a proper purpose, they are not rendered inadmissible merely because they bring vividly to the jurors the details of a gruesome or shocking accident or crime, even if they may tend to arouse the passion or prejudice of the jurors." *Mills*, 450 Mich at 77 (quotation marks and citations omitted); *Howard*, 226 Mich App at 549-550. And, regardless of defendant's offer to stipulate that the victim's injuries were serious, the prosecution still had the burden of proving every element of the charged offenses beyond a reasonable doubt. *Mills*, 450 Mich at 69. Accordingly, the trial court did not abuse its discretion in admitting the photographs depicting the victim's injuries.

## III. OV 3

Defendant argues the trial court erred when it assessed 25 points for OV 3. We disagree.

## A. STANDARD OF REVIEW

"Under the sentencing guidelines, the circuit court's factual determinations are reviewed for clear error and must be supported by a preponderance of the evidence." *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013). "[T]he clear-error standard requires us to affirm unless we are definitely and firmly convinced the trial court made a mistake[.]" *People v Ziegler*, 343 Mich App 406, 410; 997 NW2d 493 (2022). When calculating the sentencing guidelines, a court may consider all record evidence, including the contents of a Presentence Investigation Report (PSIR) and a victim-impact statement. *People v Montague*, 338 Mich App 29, 55; 979 NW2d 406 (2021). "Whether the facts, as found, are adequate to satisfy the scoring conditions prescribed by statute, i.e., the application of the facts to the law, is a question of statutory interpretation, which an appellate court reviews de novo." *Hardy*, 494 Mich at 438.

---

[5] The rules were amended effective January 1, 2024, after the trial in this case took place. Our citation is to the rule in effect during defendant's trial.

## B. ANALYSIS

Specifically, defendant submits the trial court erred when it assessed 25 points for OV 3, rather than 10 points for bodily injury requiring medical treatment, because there was no evidence the victim's injury was permanent when it occurred only six months earlier.[6]  We disagree.

OV 3 addresses whether physical injury occurred to a victim.  MCL 777.33(1).  The trial court must assess 25 points when a "[l]ife threatening or permanent incapacitating injury occurred to a victim."  MCL 777.33(1)(c).  When, however, a "[b]odily injury requiring medical treatment occurred to a victim," the sentencing court must assess 10 points for OV 3.  MCL 777.33(1)(d).

During trial, the victim detailed her injuries.  The PSIR reflected that the victim suffered "severe lacerations and broken bones in her left ankle."  The victim reported that she had "only limited use of her left ankle, which appears to be a permanent condition."  The victim-impact statement in the PSIR confirmed that the victim had "only limited use of her left ankle."  Medical staff had conveyed to the victim that "this limited use of her left ankle and leg will probably be a permanent condition."

At the sentencing hearing, the victim reported that she had missed work for 8½ months because of her injuries and still could not work a full day.  The injured area was "constantly swollen" and additional surgeries would be necessary.  The victim described missing bone, muscle, and skin in the injured area.  She also had metal inside her body that would not be removed.  Notably, she reported that she would "always" have "limited mobility;" describing how she had installed additional railings in her home because she required railings on both sides to navigate the stairs.  Moreover, she had recently been approved for a permanent handicapped parking sticker in lieu of her temporary one.  Finally, the victim told the court: "[I]t's a lasting injury[;] it's a forever injury.  I will never be the same."

In light of the victim's statement and the information contained in the PSIR, the trial court concluded that OV 3 was correctly assessed at 25 points.

On appeal, defendant contends there is insufficient evidence to demonstrate the victim would not make a full recovery given that only six months had elapsed.[7]  This Court, however, recently rejected this identical argument, holding:

> The evidence available to the trial court was that two victims of [the] defendant's offense had been severely injured in ways that continued to significantly incapacitate them in their daily lives, and that it was very possible they would never fully recover.  [The defendant's] argument, in essence, is that the victims might make a full recovery.  *But one victim will be left with metal plates and pins in her leg, with the attendant risk of future surgeries*, while the other will continue to suffer long-term changes to her cognition and memory.  Moreover, *both victims*

---

[6] The assault occurred on July 24, 2022, and defendant was sentenced on January 23, 2024—one year and six months later.

[7] See footnote 6.

*expressed that there was a significant likelihood that their incapacities would be permanent.* On this record, the trial court did not abuse its discretion by assessing 25 points for OV 3. [*People v Teike*, ___ Mich App ___, ___; ___ NW3d ___ (2023) (Docket No. 363705); slip op at 3 (emphasis added).]

The same is true in this case. The victim said that she was missing bone, muscle, and skin. Eighteen months after the assault, the victim, who had already endured numerous surgeries to address her ankle injury, required additional surgeries. She had metal fixtures in her leg. And, consistent with the medical advice that she had received, she described her ankle injury as "a forever injury" and said that she would "never be the same." On this record, we cannot conclude that the sentencing court clearly erred in assessing 25 points for OV 3. *Montague*, 338 Mich App at 55.

## IV. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant argues her defense counsel was ineffective for failing to object to the sentencing court's 10-point assessment for OV 17 (degree of negligence exhibited). We disagree.

## A. PRESERVATION AND STANDARD OF REVIEW

Defendant concedes that this issue is unpreserved because she did not move in the trial court for a new trial or evidentiary hearing, or request remand for a hearing under *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973), in this Court. "We review unpreserved claims of ineffective assistance of counsel for errors apparent on the record." *People v Armisted*, 295 Mich App 32, 46; 811 NW2d 47 (2011).

## B. ANALYSIS

The United States and Michigan Constitutions guarantee criminal defendants the right to be represented by an attorney. US Const, Am VI; Const 1963, art 1, § 20. "The constitutional right to counsel is not merely the right to have a lawyer stand or sit nearby; rather, a criminal defendant has the right to the effective assistance of counsel." *People v Otto*, ___ Mich App ___, ___; ___ NW3d ___ (2023) (Docket No. 362161); slip op at 4.

"To establish a claim of ineffective assistance of counsel a defendant must show that counsel's performance was deficient and that counsel's deficient performance prejudiced the defense." *People v Fyda*, 288 Mich App 446, 450; 793 NW2d 712 (2010). "Trial counsel's performance is deficient when it falls below an objective standard of professional reasonableness." *People v Hughes*, 339 Mich App 99, 105; 981 NW2d 182 (2021). And a defendant is prejudiced when she demonstrates that "but for counsel's deficient performance, a different result would have been reasonably probable." *People v Armstrong*, 490 Mich 281, 290; 806 NW2d 676 (2011).

OV 17 addresses the "degree of negligence exhibited" by a defendant. MCL 777.47(1). The sentencing court must assess 10 points when "[t]he offender showed a wanton or reckless disregard for the life or property of another person." MCL 777.47(1)(a). On the other hand, if "[t]he offender was not negligent," the sentencing court must assess zero points.

MCL 777.47(1)(c). OV 17 applies when the offense involves the operation of a vehicle. MCL 777.22(1).

Defendant argues that her conduct cannot be considered reckless or wanton because she was convicted of AWIGBH, which is a specific-intent crime, and, therefore, defense counsel should have objected to the 10-point assessment for OV 17 on that ground. Defendant acknowledges that this Court previously rejected this identical argument, holding:

> We conclude that there is nothing in the plain language of MCL 777.47(1)(a) that prohibits a court from assessing 10 points for OV 17 based on facts that served to support a conviction for a specific-intent offense such as AWIGBH. Evidence that supports a determination that a defendant acted with the intent to do great bodily harm to a person can equally support a finding that the defendant acted with a wanton or reckless disregard for the person's life. The two conclusions are not mutually exclusive. Again, in this case, we hold that [the] defendant's conduct in purposely striking the victim with a motor vehicle constituted evidence demonstrating a wanton or reckless disregard for the victim's life. We do not believe it inconsistent to find that [the] defendant intended to do great bodily harm to the victim by running into him with the car and to also conclude that [the] defendant acted with a wanton or reckless disregard for the victim's life by driving into him. [*People v Herron*, unpublished per curiam opinion of the Court of Appeals, issued May 12, 2022 (Docket No. 354433), pp 4-5.]

Although *Herron* is unpublished, we find its reasoning persuasive. *People v Roy*, 346 Mich App 244, 251 n 2; 12 NW3d 183 (2023).[8] Therefore, "defendant's claim of ineffective assistance of counsel must fail because defense counsel is not required to make a meritless request or objection." *People v Chelmicki*, 305 Mich App 58, 69; 850 NW2d 612 (2014).

Regardless, even assuming that defense counsel performed deficiently by failing to object to the sentencing court's 10-point assessment for OV 17, defendant cannot establish prejudice. This is so because her sentencing guidelines range would remain the same if the court subtracted 10 points from defendant's OV score. *Armstrong*, 490 Mich at 290. Cf. *People v McFarlane*, 325 Mich App 507, 537-538; 926 NW2d 339 (2018) (the defendant was entitled to resentencing where he established that counsel's deficient performance affected the guidelines range).

Affirmed.

/s/ Christopher P. Yates
/s/ Anica Letica
/s/ Noah P. Hood

---

[8] At trial, defendant testified that she was driving while "ducking" under the dashboard and unable to see. In that position, defendant thought she hit something when she heard a "crunch," but she kept driving. Under such circumstances, there was sufficient evidence in the record to establish that defendant's actions were reckless.